**Cliff MAY, Plaintiff-Appellant,**

v.

**MORGANELLI–HEUMANN & ASSOCIATES et al., Defendants-Appellees.**

**No. 78–1571.**

United States Court of Appeals,
Ninth Circuit.

May 15, 1980.

Arthur Stanley Katz, Los Angeles, Cal., for plaintiff-appellant.

John P. Daniels, Acret & Perrochet, John P. Pollock, Los Angeles, Cal., for defendants-appellees.

Before WRIGHT, SNEED and FARRIS, Circuit Judges.

SNEED, Circuit Judge:

Cliff May sued defendants for copyright infringement and unfair competition, contending that they copied several of his drawings. The district court granted defendants summary judgment. May appeals. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand for trial because defendants' right to use May's work depends on issues of contract interpretation not properly resolved on summary judgment.

## I.

### FACTUAL BACKGROUND

Fletcher Jones hired Cliff May, an architect, on January 17, 1969, to design a residence and horse training facilities, called the Westerly Stud project. Their contract required May to prepare two sets of drawings: the preliminary design drawings and, after Jones's authorization, the final drawings and specifications. May's fee for the preliminary drawings, payable in three installments, was five percent of the final cost of construction. The first payment was due upon completion of a draft of the preliminary drawings, the second upon completion of the preliminary drawings, and the last upon completion of construction of the project. The contract contemplated that the first two payments would total five percent of the cost of construction, estimated at twenty-four dollars per square foot, of the buildings shown in the drawings. The third and final payment was five percent of the amount, if any, that the final cost of construction exceeded the estimated cost. May's fee for the final drawings was an additional five percent of the actual cost of construction. This also was payable in installments, the first when Jones authorized May to begin the final drawings, with the remainder due upon completion of construction. This also was payable in installments, the first when Jones authorized May to begin the final drawings, with the remainder due upon completion of construction. The contract allowed Jones to keep the final drawings, but it required him to return the preliminary drawings to May upon completion of the project. The contract did not mention ownership of the copyright to either set of drawings, and it contained no provision giving Jones a right to use May's work should he be discharged before completion of the project. Displeased with May's progress, Jones discharged May on June 2, 1969. Thereafter he hired the architectural firm of Morganelli-Heumann & Associates to finish Westerly Stud. Prior to May's discharge he had been paid by Jones the sum of $13,962.75. On November 5, 1969, May sued Jones in state court for breach of contract, seeking damages in the amount of $34,055.28, the alleged difference between five percent of the estimated cost of construction and the sum already paid by Jones. Jones counterclaimed for breach of contract, contending that May's drawings were worthless to him. On November 2, 1972, Jones paid May an additional $31,000 to settle the suit, but the parties did not exchange releases. Jones died soon afterward. At this point May had received from Jones a total of $44,962.75.

Shortly before he agreed to settle the state court suit, May discovered some of his preliminary drawings of Westerly Stud in Morganelli-Heumann's files. He then brought this suit against Morganelli-Heumann, several partners and employees of Morganelli-Heumann, and Bank of America, as executor of Jones's estate. May moved for partial summary judgment on the issue of liability for infringement. The Bank responded with a cross-motion for summary judgment and supported its motion with the following contentions: (1) that Jones paid May for the drawings and so owned the copyright to them through operation of the "works for hire" doctrine, (2) that by custom in the architectural profession Jones, upon payment of May for his services, had the right to use the drawings to finish Westerly Stud, and (3) that the contract gave Jones an implied right to use the drawings to finish Westerly Stud. May responded (1) that Jones had not paid him the full contract value for the drawings, (2) that under the circumstances of this case the custom in the architectural profession is that Jones could not make use of May's drawings, and (3) that there is a custom in the architectural profession that the architect retains the copyright to his drawings even if paid for those drawings, and that the parties intended to follow these customs in making the Westerly Stud contract.

In granting the defendants summary judgment, the district court made a "finding of fact" to the effect that Jones discharged all his contractual obligations to May in the state court suit. This made possible the court's conclusion of law that

Jones owned the copyright to the drawings under the "works for hire" doctrine. The court also concluded as a matter of law that May had made an election of remedies in bringing his state suit.

The district court made three additional findings of fact, which are important to its disposition of this case, that are as follows:

21. Jones has paid May $44,962.75 for the project drawings and in satisfaction of the Superior Court litigation and all contractual obligations concerning the preliminary drawings for the Westerly Stud Project.

22. There is a custom and usage in the architectural profession within the United States for an architect, at the direction of the owner, to freely utilize preliminary plans prepared by a different architect as the basis for the preparation of working drawings to be used in the construction of the structure contemplated in such preliminary plans, where the owner has severed his contractual relationship with and has paid for services rendered by the original architect who prepared such preliminary plans.

23. It is a custom and usage within the architectural profession in the United States that the architect who prepared preliminary plans has no right to object if such preliminary plans are utilized by a different architect under the circumstances described in the preceding Finding of Fact.

Although findings of fact were unnecessary in deciding this motion for summary judgment, they suggest the reasoning behind the trial court's conclusion that Jones had an implied contractual right to use the drawings.

We hold that the trial court erred in concluding that Jones had discharged all his contractual obligations to May and that by bringing the state suit May had elected a remedy that barred him from bringing this suit. We also hold that the trial court improperly granted summary judgment be-

cause there exists a genuine dispute as to the relevant custom and usage of the architectural profession which is a material fact in this case. Fed.R.Civ.P. 56(c). We, therefore, reverse the summary judgment and remand for further proceedings as indicated by this opinion.

## II.

### DIVISIBILITY OF THE CONTRACT AND ELECTION OF REMEDIES

■ The contract between May and Jones, as already pointed out, provided for Jones to make two payments at different stages of the work pertaining to the preliminary drawings. The third payment was contingent upon the final cost of construction exceeding the estimated cost upon which the amount of the first two payments was based. The state court suit brought by May sought no recovery other than for the amounts due with respect to the initial two payments. No recovery with respect to the contingent third payment was sought and no release with respect to it was sought by Jones or provided by May.

Proceeding in this manner was consistent with the design of the contract. Quite clearly Jones and May treated the preliminary drawings as distinct from the working (final) drawings with separate fees payable with respect to each. Each type of drawing was the bargained for consideration for the fee applicable to it. Moreover, there was nothing in the contract that obligated Jones to accept working drawings from May in the absence of Jones's authorization of their preparation in the manner required by the contract. As a consequence, Jones, under the terms of the contract, could accept and pay for the preliminary drawings without assuming a contractual duty to accept and pay for working drawings. May's duty to prepare working drawings was subject to the condition precedent of an authorization by Jones of their preparation. It follows that the contract was divisible.[1]

1. A single document may be executed as a memorial of several relatively separate transac-

tions. This view has been expressed as follows:

The issue posed by the trial court's holding with respect to an election of remedies by May is whether Jones's failure to pay in full for the preliminary drawings was, if a breach at all,[2] a total breach of the contract for which May either brought, or was required to bring, his action in state court for all damages arising from the total breach. As we view the matter, May was not required to treat Jones's alleged breach as total. Nor did he do so. His claim was limited to the two installments due with respect to the preliminary drawings. So limited, his claim did not address ownership of the plans or the copyright to them, and settlement of the suit did not thereby foreclose this action. May elected to treat Jones's alleged breach as partial and to preserve whatever cause of action that he might have with respect to both the third installment of the preliminary drawings fee and any use of those drawings by Jones contrary to the terms of the contract.

> Two performances promised by the one may be paired separately with two considerations promised in return, each performance being the full agreed equivalent of the stated considerations; and they may be so separate in character that we have two separate sets of reciprocal rights and duties, created by a single contract.

3A Corbin, Contracts § 696 (1960).

2. The record does not indicate conclusively that May properly performed that portion of the contract pertaining to the preliminary drawings. We express no opinion on this issue.

Depending on the nature of May's performance and of Jones's alleged breach, May might have had no choice other than to sue for partial breach. Thus, in *Coughlin v. Blair*, 41 Cal.2d 587, 262 P.2d 305 (1953), it was said:

> If the breach is partial only, the injured party may recover damages for non-performance only to the time of trial and may not recover damages for anticipated future non-performance. . . . Furthermore, even if a breach is total, the injured party may treat it as partial, unless the wrongdoer has repudiated the contract. . . . The circumstances of each case determine whether the injured party may treat a breach of contract as total. . . . If, as in the present case, the injured party has fully performed his obligations under a bilateral contract, courts usually treat a breach as partial unless it appears

## III.

## ISSUES REGARDING MAY'S RIGHTS WITH RESPECT TO THE PRELIMINARY DRAWINGS

### A. *Custom and Usage*

May's right to recover ultimately turns on the custom and usage of the architectural profession.[3] The trial court made findings that by custom and usage Jones and Morganelli-Heumann had free use of May's preliminary plans under these circumstances. Thus, the trial court concluded that May had no right in the copyright in the preliminary drawings as against Jones's use in the Westerly Stud project and that their use by Jones and Morganelli-Huemann in that project contravened neither the copyright law nor the terms of the contract between Jones and May.

■ May offered the affidavit of an architect which asserted that the prevailing custom is for the architect to maintain ownership and control of his drawings unless

> that performance of the agreement is unlikely and that the injured party may be protected only by recovery of damages for the value of the promise.

*Id.* at 598–99; 262 P.2d at 311–12 (citations omitted). *See Guntert v. City of Stockton*, 55 Cal.App.3d 131, 126 Cal.Rptr. 690 (1976). In *Minor v. Minor*, 184 Cal.App.2d 118, 127–28, 7 Cal.Rptr. 455, 461 (1960), the court held "that the doctrine of anticipatory breach does not apply to an installment contract which has been fully performed by the [injured] party."

> Where at the time of the breach the only remaining duties of performance are those of the party in breach and are for the payment of money in installments not related to one another, his breach by non-performance as to less than the whole, whether or not accompanied or followed by a repudiation, does not give rise to a claim for damages for total breach.

Restatement (Second) of Contracts § 268(3) (Tent. Draft No. 8, 1973).

3. The viability of May's suit depends on whether, in addition to the factors mentioned in the text, he has performed satisfactorily that portion of the contract pertaining to the preliminary drawings. The settlement of the state suit does not conclusively resolve this issue.

the parties agree otherwise in writing and provide for "appropriate compensation" to the architect who prepared the drawings. May's architect also stated in his affidavit that the amount May had received was not "appropriate compensation." May attempts to buttress this opinion by pointing out that the answers of Morganelli-Heumann to interrogatories show that the final cost of construction of the Westerly Stud project greatly exceeded the estimate upon which the first two payments made to May were calculated. If the custom is as May asserts and either (1) Jones knew of it, or (2) it was so well known that Jones may be presumed to have known of it, then the custom is an implied in fact term of the contract between Jones and May. *See United States, etc. v. Haas & Haynie Corp.,* 577 F.2d 568, 573–74 (9th Cir. 1978); *Heggblade-Marguleas-Tenneco, Inc. v. Sunshine Bisquit, Inc.,* 59 Cal.App.3d 948, 956–57, 131 Cal.Rptr. 183, 189 (1976). Whether May had received "appropriate compensation" thus would become an issue upon which May is entitled to his day in court.

■ On the record before us, and viewing all inferences, as on summary judgment we must, in a light most favorable to May we are compelled to conclude that there exists a genuine dispute with respect to the nature and existence of the applicable custom and usage within the architectural profession. The materiality of this custom and usage already has been made apparent. It follows that summary judgment for the defendants was improper.

### B. *"Works for Hire" Doctrine*

■ Defendants argue that our conclusion is inconsistent with what is known as the "works for hire" doctrine. Section 26 of the Copyright Act, 17 U.S.C. § 26, provides that "the word 'author' shall include an employer in the case of works made for hire." Under the "works for hire" doctrine, when an employer hires an employee or an independent contractor to produce work of an artistic nature, the courts will presume in the absence of contrary proof that the parties expected the employer to own the copyright and that the artist set his price accordingly. *Scherr v. Universal Match Corporation,* 417 F.2d 497, 502 (2d Cir. 1969) (Friendly, J., dissenting), *cert. denied,* 397 U.S. 936, 90 S.Ct. 945, 25 L.Ed.2d 116 (1970); *Brattleboro Publishing Co. v. Winmill Publishing Corp.,* 369 F.2d 565 (2d Cir. 1966); *Nimmer on Copyright,* § 503 and cases therein.[4] Both the cases and Professor Nimmer make clear that the doctrine is based on the presumed mutual intent of the parties, and does not operate as a matter of law:

[I]n practice there was no question but that an employer and employee might agree, and often did agree that the rights

---

4. Congress changed copyright law in its entirety, effective January 1, 1978. Section 101 now limits works made for hire by independent contractors to the following categories:

a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audio-visual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

Section 201 of the 1978 Act provides that the employer or the person for whom the work is prepared is the author of a work made for hire "and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."

We view May as an independent contractor rather than an employee, so under section 101, May's drawings would not be subject to the "works for hire" doctrine, both because of the absence of a written agreement so providing, and because the drawings do not fall within one of the prescribed categories of work. Neither party has suggested that we give sections 101 and 201 retroactive effect, and we decline at this stage to do so. *See Nimmer,* §§ 1.11 and 5.03[B][2][C]. The cases under section 26 do not distinguish between types of independent contractors. What is necessary is that the artist produce the work at the instance and expense of the employer (or commissioning party), *Brattleboro,* 369 F.2d at 567; *Picture Music, Inc. v. Bourne, Inc.,* 457 F.2d 1213, 1216 (2d Cir.), *cert. denied,* 409 U.S. 997, 93 S.Ct. 320, 34 L.Ed.2d 262 (1972) (employer the "motivating factor"). Those factors are present here.

under the copyright would remain in the employee (without any requirement of an assignment by employer to employee) subject to a right of the employer to be exclusively licensed to use the work in particular media. The provision of former Sec. 26 . . . must be read as creating a presumption of copyright in the employer which may be rebutted only by a preponderance of evidence of a contrary agreement as between the parties.

*Nimmer*, § 5.03[D] (footnotes omitted).

Defendants argue that May's evidence of custom and usage is insufficient to rebut the "work for hire" presumption that Jones owned the copyright. In *Lin-Brook Builders Hardware v. Gertler*, 352 F.2d 298 (9th Cir. 1965), this court addressed the question of the type of evidence necessary to rebut the presumption:

> [W]hen one person engages another, whether as employee or as an independent contractor, to produce a work of an artistic nature, that in the absence of an *express contractual reservation* of a copyright in the artist, the presumption arises that the mutual intent of the parties is that the title to the copyright shall be in the person at whose instance and expense the work is done.

*Id.* at 300 (emphasis added).

Given its literal effect, this language precludes resort to extrinsic evidence to rebut the "works for hire" inference. However, the court in *Lin-Brook* did consider extrinsic evidence. An employer sought to enforce his copyright against a third party who, to rebut the "work for hire" inference, introduced evidence of an assignment of copyright from the artist to the employer which was made after the third party's alleged infringement. We found this evidence insufficient to rebut the presumption of ownership in the employer even before the assignment. Moreover, we cited as authority *Yardley v. Houghton Mifflin Co.*,

108 F.2d 28 (2d Cir. 1939), *cert. denied*, 309 U.S. 686, 60 S.Ct. 891, 84 L.Ed. 1029 (1940), in which the Second Circuit suggested that extrinsic evidence is permissible to rebut the presumption:

> If [the artist] is solicited by a patron to execute a commission for pay, the presumption should be indulged that the patron desires to control the publication of copies and that the artist consents that he may, unless by the terms of the contract, express or implicit, the artist has reserved the copyright to himself.

*Id.* at 31.

■ We think it proper, then, to consider extrinsic evidence to determine whether the parties intended to contract contrary to the presumption of the "works for hire" doctrine. Such evidence includes prevailing custom and usage.[5] May has offered evidence that professional custom allows the architect to retain control over his work, and that his fee arrangement permits the inference that the parties agreed to follow such custom in the Westerly Stud contract.

Viewed in the light most favorable to May, questions of fact as to the parties' intent have been raised sufficient to preclude summary judgment. Resolutions of issues of credibility and of disputes pertaining to custom and usage should not be achieved by means of summary judgment.

Reversed and Remanded.

---

5. *But see Avedon v. Exstein*, 141 F.Supp. 278 (S.D.N.Y.1956) (Evidence relating to custom and usage not admissible "to alter a general rule of law" absent an allegation that the contract provides for a reservation of rights in the artist).