**JOSEPH J. LEGAT ARCHITECTS, P.C., Plaintiff,**

**v.**

**UNITED STATES DEVELOPMENT CORPORATION, Esper A. Peterson, Seth Pines and Royal Oak Apartments Phase III, Defendants.**

**No. 84 C 8803.**

United States District Court, N.D. Illinois, E.D.

Nov. 25, 1985.

Thomas A. Morris, Jr., Nicholas Anaclerio, Jr., Brydges, Riseborough, Morris, Franke & Miller, Waukegan, Ill., for plaintiff.

Thomas W. Gooch, Thomas R. Ruth & Assoc., Barrington, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This bitter suit between an architect and a developer has spawned many overlapping motions, which have unduly complicated the case. Joseph J. Legat Architects, P.C. ("Legat P.C.") sued United States Development Corporation ("USCD"), its president Esper Peterson ("Peterson") and one of its architects Seth Pines ("Pines") in a fifteen count complaint alleging federal copyright and trademark claims, as well as pendent state claims of breach of contract and unfair competition. Early this year we held that we had subject matter jurisdiction over the case. *See Legat v. United States Development Corp.*, 601 F.Supp. 673 (N.D. Ill.1985). Since then, we have referred Counts I and II, breach of contract claims, to arbitration before retired Illinois Supreme Court Justice Walter Schaefer, but retained jurisdiction over the rest of the case.[1] Now before the Court are several motions, including motions by the defendants to dismiss Counts III–XV and for summary judgment as to Counts I and II and a motion by Legat P.C. for a preliminary injunction. For the reasons stated below, each of defendants' motions is denied; Legat P.C.'s motion is granted in principle,

---

1. The parties' contract provided for arbitration of disputes arising out of the contract. In an unpublished order dated March 13, 1985, we granted defendants' motion to refer the two contract counts to arbitration. We denied defendants' companion motion to stay the non-contract counts pending arbitration. We held that the contract issues were separate from those involved in Counts III–XV, so that a stay would not serve judicial economy. *See* March 13 Order at 2–3. Defendants try to revive this issue in connection with their summary judgment motion, and below at 19–20 we again lay their argument to rest.

but no formal order is entered with this opinion.

### Facts

Although the parties have been fighting over what happened between them, much of their dispute centers over interpretation of the facts, not over the facts themselves. Unless indicated otherwise, the facts recited below are not in dispute.

Legat P.C. is an architectural firm headed by Joseph Legat, an architect for over twenty years. On October 1, 1981, Legat P.C. contracted with Peterson and USDC to draw up architectural plans for a federally subsidized housing project called the Royal Oak Apartments Phase III project ("Royal Oak project" or "the Project"). The contract was a standard form agreement of the American Institute of Architects ("AIA"). Article 5.1 of the Agreement governs ownership of the documents Legat was to create, and it states:

Drawings and Specifications as instruments of service are and shall remain the property of the Architect whether the project for which they are made is executed or not. The Owner [Peterson and USDC] shall be permitted to retain copies, including reproducible copies, of Drawings and Specifications for information and reference in connection with the Owner's use and occupancy of the Project. The Drawings and Specifications shall not be used by the owner on other projects, for additions to this project, or for completion of this Project by others provided the Architect is not in default under this Agreement, except by agreement in writing and with appropriate compensation to the Architect.

The Agreement provided that USDC would pay Legat P.C. $50,000 for designing the Royal Oak project, in increments of $10,-000, $30,000 and $20,000.

Legat and his employees drew up plans and delivered them to USDC and Peterson in November 1981. The Plans then conformed with relevant regulations of the Federal Department of Housing and Urban Development ("HUD") and the Lake County Department of Building and Zoning. However, between November 1981 and spring 1983, both the HUD and Lake County regulations changed, so that Legat's original architectural plans no longer conformed. Legat claims that he acceded to and fulfilled USDC's subsequent request to amend the Plans to bring them into conformity. Pines and Peterson claim in their affidavits that Legat never brought the Plans into conformity, and that Pines did so by revising them. Regardless of who revised the Plans, it is clear that Pines and Peterson filed the Plans with HUD and Lake County to secure approval to build the Project. Pines says he stamped and signed the following statement on the Plans he filed with HUD:

I hereby certify that I have reviewed the attached plans of Royal Oak Phase III, consisting of 21 pages. These plans comply with all applicable building codes, ordinances, rules and regulations of the County of Lake, State of Illinois and all rules and regulations of the Federal Housing Administration and Department of Housing and Urban Development. I assume full responsibility and liability for any defects in these plans, to the extent of the responsibility and liability of the design architect.

However, the cover sheet of the Plans on file with Lake County and HUD do not contain this statement, but identify Seth Pines as "Architect" and do not mention Legat at all as architect or otherwise.

USDC and Peterson began building, using the Plans on file with HUD and Lake County, having paid Legat only $20,000. They claim Legat breached the contract by submitting non-conforming plans and refusing to revise them. Legat asserts that he did revise the Plans, and that defendants thus have breached the contract. Moreover, he claims that the representations on the HUD and Lake County cover sheets that Pines was architect constituted copyright infringement, as well as a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and of various state law statutes. Legat's preliminary injunction

motion asks the Court to issue a writ of seizure under 17 U.S.C. §§ 501, 502 to impound the Plans and to enjoin the defendants from further copying and use of the Plans. Defendant's opposition to this motion overlaps their motion to dismiss. In a nutshell, they assert that they had a right under the contract and copyright laws to use the Plans in the way they did; that their acts cannot create any "likelihood of confusion," so that the various trademark and unfair competition claims must fail; and that Pines, as USDC's agent, must be dismissed from the counts which name him. We turn first to defendants' motion to dismiss, and then deal with Legat P.C.'s motion for preliminary injunctive relief.

### B. *The Motion to Dismiss*

#### 1. *Standard of Review*

We note at the outset that Legat's "motion to dismiss" must be considered as a motion for summary judgment. Both sides have submitted affidavits and other supporting materials with their briefs. Because we must turn to matters outside the pleadings to resolve defendants' motion, the standards of Fed.R.Civ.P. 56 apply. *See* Fed.R.Civ.P. 12(b). Defendants' unsupported protests to the contrary cannot trump this clear command of Rule 12(b).

We can grant defendants' summary judgment motion only if they can show that no genuine issue of material fact exists, and that they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Korf v. Ball State University,* 726 F.2d 1222, 1226 (7th Cir.1984). We must view the evidence, as well as the reasonable inferences it creates, in the light most favorable to Legat P.C., the party opposing the motion. *See, e.g., Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir. 1984). If defendants fail to carry their "strict burden," their motion will be denied, even if Legat P.C. mounts no opposition.

*Id.* But if defendants successfully carry their burden, Legat P.C. must bear the resulting burden of creating a genuine issue. It cannot rest on naked pleadings or assertions in meeting this burden. Fed.R. Civ.P. 56(e); *Big O,* 741 F.2d at 163. Mindful of these familiar standards, we consider defendants' arguments in turn.

#### 2. *The Copyright Claims*

Defendants argue that there can be no copyright infringement in this case because the parties' contract gave them a right to copy and reproduce the architectural plans for use in building the Royal Oak project. They assert that they did no more than what the contract allows them to do: they essentially were to pay a $50,000 "royalty fee" for the one time right or license to copy and use the plans to build the project. These assertions are essentially correct,[2] but miss the point.

■ It is true that Article 5.1 of the contract clearly grants defendants the right "to retain copies, including reproducible copies, of Drawings and Specifications for information and reference in connection with the Owner's use and occupancy of the Project." Obviously USDC, the general contractor, had the right to use and copy the Plans as reasonably necessary to build the Royal Oak project. Moreover, the contract also appears to give defendants the right to continue using the Plans even if Legat were in default. *See* above at 2 (quoting relevant contract provisions). But the contract is also unambiguous that the Plans remain the property of the architect Legat P.C. *See* Article 5.1. Legat P.C.'s grievance, as we understand it, is *not* that defendants were using and copying the Plans in order to build Royal Oak.[3] Rather it complains that defendants exceeded its contractual rights by copying and filing these Plans in a way that suggested that *Pines,* not Legat, was the architect who

---

**2.** Below in Section C we accept defendants' argument in narrowing the scope of the injunctive order Legat P.C. is seeking. But as detailed in the text, defendants' arguments warrant neither dismissal of the case nor complete denial of Legat P.C.'s preliminary injunction motion.

**3.** Legat does of course complain that he was not paid for this use. But that is essentially a contract issue, *see* discussion below at 300, one that is distinct from defendants' conduct in connection with filing the Plans with HUD and Lake County.

created the Plans. No reasonable construction of the contract permits such a use of the Plans, argues Legat P.C. We agree. Assuming that Legat authored the Plans,[4] we do not see how the contract authorized defendants to copy the Plans and suggest that Pines was their creator. This would be a plain infringement if proved. *See* below at 302.

Defendants take several tacks in justifying their actions, none of which support an award of summary judgment in their favor. Defendants, for example, argue that they own the Plans by virtue of Legat P.C.'s alleged contractual default. Yet they cite no authority for this proposition, and we perceive none.[5] They fail to deal with the contract's plain language that *Legat* owns the Plans. In any event, this question of title, if it is not frivolous, is now in arbitration before Justice Schaefer. Clearly, then, this issue does not warrant summary judgment for the defendants.

■ Defendants also argue that the Plans were a "work made for hire." Two statutory provisions govern the "work for hire" doctrine. 17 U.S.C. § 101 defines a work made for hire as:

(1) a work prepared by an employee within the scope of his or her employment; or

(2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or

as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire....

The thrust of defendants' argument is apparently that the Plans Legat P.C. prepared were a "work for hire," which gave USDC and Peterson all copyright rights, including the right to copy and distribute them. We disagree that defendants are entitled to summary judgment on this count and, moreover, think that the facts clearly show that the Plans were *not* a "work for hire."

■ Section 101 defines two types of situations, one where the work is "commissioned" and one for where it is done by an "employee within the scope of his employment." Defendants do not seriously argue that the Plans constituted a "commissioned work" as defined in 17 U.S.C. § 101(2). Only the specific types of work listed in that section constitute works prepared "on special order or commission." *See* 1 M. Nimmer, *Nimmer on Copyright*, 15.-03[B][2][a] at 5–18 to 5–19 (1985). Architectural work is not within one of those categories. *See May v. Morganelli-Heumann & Associates*, 618 F.2d 1363, 1368 n. 4 (9th Cir.1980) (dictum); *Aitken, Hazen, et al. v. Empire Construction Co.*, 542 F.Supp. 252, 257 (D.Neb.1982); *Meltzer v. Zoller*, 520 F.Supp. 847, 855 (D.N.J.1981). Thus, defendants are left with the argument that Legat drew up the Plans as an "employee within the scope of his ... employment." 17 U.S.C. § 101(1). We disagree.

---

4. Defendants' affidavits assert, and Legat denies, that Pines revised the Plans. If this dispute were material, we would have to resolve it in Legat's favor for the purposes of this summary judgment motion. But this dispute really is not material to whether defendants' actions were proper. Defendants do not dispute that Legat initially drafted the Plans. They also do not directly contradict Legat's assertion that, although defendants gave him drafts of the Phase II project as a guide, he did not model the Phase III project after Phase II. Thus, defendants' version of the facts, when combined with the uncontested facts, reveals that Legat was principal author of the Plans, and Pines at most made some revisions to satisfy regulations. Even un-

der this version of the facts, defendants' actions were improper, since the public record suggests that Pines was *sole* creator of the Plans.

5. While a default by Legat P.C. would arguably preserve or expand defendants' rights to use the Plans, *see* Article 5.1 (quoted above at 295), a default does not appear to shift title in the Plans. Article 5.1 plainly vests title in Legat P.C., and while defendants may have enjoyed the right to use the Plans to finish the Project, we fail to see how they had a contractual right to create a false impression as to who drafted the Plans.

Neither the Copyright Act nor the Committee Reports define the terms "employee" or "scope of employment." However, a substantial body of law has shaped the meanings of these terms. *See generally* 1 *Nimmer* at 5–12 to 5–14. The pivotal question in determining if an employment relationship exists is whether the alleged employer has the right to direct and supervise the manner in which the work is performed. *See e.g., Aitken, Hazen,* 542 F.Supp. at 257; 1 *Nimmer,* § 5.03[B][1][a] at 5–12 to 5–12.1. Under this criterion, Legat P.C. was an independent contractor, not an employee. Legat P.C. is a well established architectural firm governed by professional standards and regulated by statute. *See* Ill.Rev.Stat. ch. 111, ¶ 1201 *et seq.* (1983). As such, a presumption is warranted that Legat P.C. had the principal control over the development of the Plans. *Cf. Aitken, Hazen,* 542 F.Supp. at 258 (architect has professional obligation to use independent judgment in drawing plans). The record does not rebut this presumption, and, indeed, even absent a presumption, it appears correct that Legat P.C. was an independent contractor. Article 1 of the contract provides that Legat P.C. was to review with USDC alternative approaches to design and construction of the Project. Following such a review, Legat P.C. was to prepare relevant Drawings and Specifications. This preparation was subject to "approval by the Owner," but nowhere does the contract empower the Owner, USDC, to direct and supervise Legat P.C.'s day-to-day preparation of the documents. Legat's affidavit avers that he supervised the preparation of the documents, and that neither Pines nor anyone else controlled or supervised his work. Pines' and Peterson's affidavits do not contradict this allegation. They claim that Legat's Plans were subject to Pines' *approval,*[6] but neither one claims that they directly supervised or controlled Legat's work. Indeed, such an allegation would be incredible, since during the relevant time period, Pines was not even a registered architect, while Legat had been practicing for over twenty years. It is highly unlikely that in such circumstances Pines would "supervise" Legat's work in the sense meant by the "work for hire" doctrine. In any event, the fact that Pines had the contractual power to approve or veto the final or interim products does not render him an "employer" within the "work for hire" doctrine. Architectural clients typically must approve the final product and even prescribe certain design features at the outset. But this does not mean they "supervise" or "control" the professional architect as he or she prepares the details of the plans.

This case is on all fours with the *Aitken, Hazen* case, where the Court held that the "work for hire" doctrine did not apply to services rendered by an architectural firm to a building contractor:

> While [the builder] had the right to direct the result to be accomplished by [the architect's] work—i.e., architectural plans for a multiplex apartment building with certain design features—it did not have the right to control and direct the detail and means by which that result was accomplished. Put simply, [the builder] had the right to direct what should be done, but not how it should be done. Rather it was the [architect's] obligation, as a professional architectural and engineering firm, to use its independent professional knowledge and experience in designing the architectural plans in question.

542 F.Supp. at 258. The factual and logical bases of the *Aitken, Hazen* holding apply here.[7] We accordingly deny defendants'

---

**6.** Specifically, Peterson's affidavit says, "I gave the plans and specifications for Royal Oak Phase II to plaintiff Legat to use in making the plans and specifications for Phase III together with instructions to report to both Mr. Seth Pines and me for approval of any changes made in the Phase II Project plans and specifications for Phase III." This assertion does not contradict Legat's claim, *see* n. 4 above, that he did not *actually* model Phase III on Phase II. Nor does Peterson assert that he and Pines directly controlled or supervised the details of Legat's work.

**7.** We disagree with defendants that this case resembles *Peregrine v. Lauren Corp.,* 601 F.Supp. 828 (D.Colo.1985). Under the facts of

motion for summary judgment to the extent it is based on the "work for hire" doctrine, since the record appears clear that Legat P.C. operated as an independent contractor rather than as defendants' employee.

### 3. *The Confusion Issues*

Legat P.C. has alternatively sought relief under the Lanham Act, 15 U.S.C. § 1125 [8] and the Illinois Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, § 311 *et seq.* The parties agree that to obtain relief under the plain terms of either of these statutes, Legat P.C. must prove, among other things, that defendants falsely designated the origin of the Plans, creating a likelihood of public confusion. Recognizing the importance of the "confusion" issue, defendants seek dismissal of those counts for which confusion is relevant, arguing that confusion is highly unlikely in this case. Once again, we deny defendants' attempt at dismissal.

The complete factual record reveals that defendants are incorrect. We begin with Legat's version. As noted earlier, Legat's drawings supposedly did not conform to HUD and Lake County regulations, and he refused to revise them. In order to prevent costly delay, Pines revised the Plans to bring them into conformance and then filed them with HUD and Lake County. Defendants assert that in signing and sealing the Plans, Pines was not overtly indicating that he and not Legat was the architect who created them. Rather, they claim, he "restrictively assumed liability" for the

Plans. That is, he signed as the architect "responsible" for the Plans and was essentially certifying that the Plans conformed to relevant regulations. *See* above at 295. Relying on these facts, defendants argue that no confusion concerning authorship of the Plans is likely, since Pines did not purport to create them, and his name only appears on file with HUD and Lake County.

Legat P.C.'s affidavit and documentary evidence complete the picture. Legat claims that he did revise the Plans, that they did conform, and that the Plans on file with HUD and Lake County are completely created by him. Besides this assertion, the rest of Legat's material assertions have not been contested. Legat P.C. has filed with the Court copies of the "cover sheet" for the Plans on file with HUD and Lake County. Those sheets contain a space next to the word "Architect," and Pines' name appears in that space. Nowhere on that form or on the Plans themselves does Legat's name appear. Moreover, Legat claims that under industry custom *only* the author of architectural plans certifies the plans as conforming to relevant regulations. It thus appears quite possible, even likely, that someone viewing the Plans on file would conclude that Pines is the architect. Legat P.C. avers that the files are accessible to the public, so that someone wanting to know who designed the Phase III project could refer to the Plans and be misled. Further, Legat P.C. avers that the sub-contractors who have worked on the Project

that case the defendant, an advertising agency, "at any point could have vetoed any of Mr. Peregrine's [a photographer] ideas or otherwise radically changed the course, scope or fact or Mr. Peregrine's photographic exertions on the project." 601 F.Supp. at 829. It is clear in this case that defendants did not have such a tight rein on Legat's creations. They could veto a final product, but they were not present calling the shots as Legat was creating the Plans.

**8.** That section provides:

(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including

words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

could have already been misled. Considering the above evidence, as we must, in the light most favorable to Legat P.C. at minimum a genuine issue of fact exists as to the likelihood of public confusion. Indeed, even the *uncontested* facts show that confusion is likely.

Defendants' arguments to the contrary lack merit. They argue that HUD and Lake County officials knew of the dispute between the parties and so would not be confused by Pines' certification. Even if this is true, there is still the possibility that others, including sub-contractors and future readers of the file, have been and might be confused. The possible lack of official confusion does not imply that Pines' certification will not mislead others. Defendants next argue Pines' name appears "only" on the few Plans filed with HUD and "only" to restrictively assume liability for them. First, the clever phrase "restrictive assumption of liability," is nothing but a euphemism for authorship if Legat is correct that industry insiders would conclude that Pines' certification suggests that he created the Plans. Certainly the phrase, if it means anything, does not dispel the likelihood of confusion stemming from Pines' name next to the word "architect" on the cover sheet. Second, the argument that Pines' name appears "only" on a few Plans and nowhere else proves too much. It is undisputed that Legat's name appears nowhere,[9] and Pines' name appears, if only in a few places, beside the word "architect." That Pines did not trumpet this designation far and wide does not suggest that his few signatures are unlikely to confuse. Even one false designation of authorship can be enough to create confusion, so long as that designation is accessible to the public. Viewing the facts in the light most favorable to Legat P.C.,[10] the likelihood of confusion is manifest, and defendant's arguments to the contrary must be rejected.

### 4. *Pines as Individual Defendant*

■ The defendants argue that even if we disagree with them on the above arguments, we should dismiss Pines as an individual defendant. They argue that Pines acted at all times within the scope of his employment, as agent of USDC and Peterson, and that only they, rather than he, can be held liable. This misstates the law. It is true that under the doctrine of *respondeat superior*, USDC and Peterson may be held liable for the wrongful acts of their "servant," Pines. *See, e.g., Bremen State Bank v. Hartford Accident & Indemnity Co.,* 427 F.2d 425, 428 (7th Cir.1970). But neither this case nor either of the other cases cited by the defendants suggest that the agent himself if not also liable to a third party for the wrongful acts he commits within the scope of his agency. Rather, Pines plainly can be held liable for his allegedly wrongful acts. *See, e.g., Jeanty v. McKey & Poague, Inc.,* 496 F.2d 1119, 1120–21 (7th Cir.1974); *Adkins v. Chicago, Rock Island & Pacific R.R. Co.,* 2 Ill. App.3d 906, 913–15, 274 N.E.2d 507, 512 (1971), *rev'd on other grounds,* 54 Ill.2d 511, 301 N.E.2d 729 (1973), *cert. denied,* 424 U.S. 943, 96 S.Ct. 1411, 47 L.Ed.2d 349 (1976); Rest. (Second) of Agency, §§ 343, 348, 359C (1958). Accordingly, defendants' motion to dismiss Seth Pines as a defendant is denied.

### C. Legat P.C.'s *Motion for a Preliminary Injunction* [11]

Legat P.C. has moved under 17 U.S.C. §§ 502, 503 [12] for a preliminary injunction

---

9. Defendants argue that the contract does not give Legat the right to have his name appear on the Plans. This contention is frivolous. The question here is whether defendants' actions are likely to cause confusion. Defendants' contention is irrelevant, as the question is not whether *Legat* had a right to have his name on the Plans that he authored, but whether *Pines* had a right to have his name appear there.

10. Even without applying such a standard of review, the undisputed material facts favor Le-

gat P.C. *See* n. 4 above. We think defendants' actions, which create a false impression that Pines drafted the Plan, are manifestly likely to mislead a viewer of the Plans on file.

11. Defendants' motion to strike portions of Legat P.C.'s Reply Brief in support of this motion lacks merit and is denied. It is so ordered.

12. Those sections provide in relevant part:
   (a) Any court having jurisdiction of a civil action arising under this title may, subject to

and writ of seizure, seeking impoundment of the allegedly infringing Plans. Legat argues that injunctive relief is alternatively warranted under the Lanham Act and the Illinois Deceptive Business Practices Act. We agree that Legat P.C. may be entitled to some form of injunctive relief in this case, but at this time we are not ready to enter a formal remedial order.

At the outset, we note our denial of defendants' summary judgment motion does not automatically imply that Legat P.C. deserves preliminary injunctive relief. In seeking summary judgment, defendants carried the burden of showing that no genuine issue of material fact existed, and we were constrained to view the facts in the light most favorable to Legat P.C. In contrast, in seeking a preliminary injunction, Legat P.C. now carries the burden of proving a reasonable likelihood of prevailing on the merits, as well as irreparable harm and so on. In view of the procedural differences between the two motions, there would be no inherent inconsistency in simultaneously denying defendants' motion for summary judgment and Legat P.C.'s motion for a preliminary injunction. *See Communications Maintenance, Inc.*, 761 F.2d 1202, 1205 (7th Cir.1985); *Technical Publishing Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1139 (7th Cir.1984). On the other hand, it could also obviously be consistent to deny defendants' motion for summary judgment *and* grant plaintiff's motion for preliminary injunctive relief, especially in light of our analysis above.

■ Before applying the usual four part test for injunctive relief, we think it proper to discuss the scope of the injunctive order that would be appropriate in this case. Even if Legat P.C. were correct as to all

facts and could prevail on the four-part test, part of the remedy it seeks—seizure and impoundment of all copies of the Plans—is unnecessary and unjustified. The essence of its copyright, Lanham Act and unfair competition claims, as we see it, is that defendants for whatever reason have created the impression that Pines is sole author of the Plans. Below we agree that this false designation of authorship exceeds the rights granted by the contract and warrants some form of injunctive remedy. But this does not mean the Plans must be impounded. Defendants' possession and use of unmarked plans creates no confusion. Moreover, defendants are right that their copying and use of the Plans in order to *build* the Project is authorized by Article 5.1 of the contract. Their failure to pay Legat P.C. for this use may entitle it to damages, but we do not see that as infringement warranting impoundment. In other words, we perceive two distinct harms to Legat P.C., only one of which cannot be repaired by damages. As we discuss below, the illusion that Pines drafted the Plans does harm Legat irreparably absent injunctive relief; but defendants' copying and use of the Plans in connection with the Project harms Legat P.C. only in that he was not paid in full under the contract for this use. Money *can* redress this injury.

In short, equity would be served if the public record is corrected as to the source and creator(s) of the Plans. An order requiring that the cover sheets to the Plans (where Pines' name appears) be amended would vindicate Legat's equitable interest in preventing confusion. But impoundment of the Plans would serve no purpose. Thus, in discussing the propriety of injunc-

---

the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.
17 U.S.C. § 502(a).

(a) At any time while an action under this title is pending, the court may order the impounding, on such terms as it may deem

reasonable, of all copies or phonorecords claimed to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced.
17 U.S.C. § 503(a).

tive relief below, we are discussing only whether an order which corrects the public record, not one which seizes all Plans, is proper under the four-part test.

To obtain preliminary injunctive relief, plaintiff must show:

(1) that it has no adequate remedy at law and will be irreparably harmed if the preliminary injunction is not granted;

(2) that the irreparable harm it would suffer outweighs the harm that a preliminary injunction may inflict on the plaintiffs;

(3) that it has some likelihood of succeeding on the merits; and

(4) that the granting of an injunction will not somehow disturb the "public interest."

See, e.g., Palmer v. City of Chicago, 755 F.2d 560, 576 (7th Cir.1985); Roland Machinery Co. v. Dresser Industries, 749 F.2d 380, 386–87 (7th Cir.1984) (reh'g and reh'g en banc denied); United States v. Board of Education of City of Chicago, 610 F.Supp. 702, 704–05 (N.D.Ill.1985) (Aspen, J.). We will briefly discuss factors (1), (2) and (4) before focussing on factor (3).

■ If copyright infringement is shown, it is generally presumed that a plaintiff will be irreparably harmed absent a preliminary injunction, and that it will have no adequate remedy at law. Apple Computer, Inc. v. Formula International, Inc., 725 F.2d 521, 525 (7th Cir.1984); Atari, Inc. v. North American Philips Consumer Electronics Corp., 672 F.2d 607, 620 (7th Cir. 1982), cert. denied, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982); Federal Practice & Procedure, § 2948 at 440–41 (1973). We do not think that defendants have successfully rebutted this presumption in favor of injunctive relief. So long as public records suggest that Pines drafted the Plans, Legat P.C.'s goodwill and future business is threatened. While damages might compensate Legat P.C. for defendants continued copying and use of the Plans in building the Royal Oak Project, such damages are not adequate to compensate Legat P.C. for the appearance, created by defendants, that Pines authored the Plans.

For similar reasons, we disagree with defendants that the "balance of harms" tips in their favor. They claim that a preliminary injunction would halt construction of the Project, thereby damaging their business and goodwill. They also claim that an injunction would deplete the housing stock and cause unemployment, thereby disserving the public interest as well. Legat P.C. disputes the factual basis of defendants' assertions: Legat claims that construction is nearly done, and that four of the five buildings in the Project are already occupied. He also asserts that the Plans are not needed to finish the little work that remains to be done on the fifth building. We need not resolve this factual dispute at this time. We do not intend to halt construction even if defendants are right that more needs to be done and the Plans are needed to do it. The type of injunctive relief we discussed earlier is relatively minor and should harm defendants little, as no Plans would be impounded. If they are indeed needed for work, they would be available. Thus, no jobs or housing is at stake. And our order would actually serve the public interest in that it would "preserve the integrity of the copyright laws," Atari, 672 F.2d at 620, and correct the public record. In light of the contours of the order we are envisioning, then, we think the "balance of harms" and "public interest" factors do not block Legat P.C.'s attempt for injunctive relief.

Finally, we turn to the third factor, the "likelihood of success on the merits." While this standard is by no means precise, "all courts agree that plaintiff must present a prima facie case but need not show that he is certain to win." 11 Wright & Miller, § 2948 at 452. This factor is also fluid. It depends on the degree of harm Legat would suffer in the absence of an injunction. If the harm to Legat P.C. is great, it carries less of a burden of proving likelihood of success on the merits; conversely, if its harm is slight, it must show greater likelihood of success on the merits in order to secure preliminary injunctive

relief. *See Roland Machineries*, 749 F.2d at 387; *U.S. v. Board of Education*, 610 F.Supp. at 704–05; 11 Wright & Miller, § 2948 at 453–55. Thus, where harm to a plaintiff was extremely severe, we have held that a party seeking injunctive relief need only show that its chances of succeeding are "more than negligible," that is, that it raises "serious questions." *See Board of Education*, 610 F.Supp. at 705. However, in this case, while the harm to plaintiff from Pines' actions is irreparable, it is not particularly severe or compelling. The Plans are on file with government agencies, and, while accessible, they are probably not often seen by others. Moreover, if Legat is right that the Project is nearly done, then subcontractors have already viewed the Plans and whatever damage, if any, was done and is water under the bridge. Thus, we see no need to relax the "likelihood of success" standard in this case. To obtain preliminary injunctive relief, Legat P.C. must show it has a substantial likelihood of succeeding on the merits.

Nevertheless, we think that Legat is substantially likely to succeed in showing that Pines' so-called "restrictive assumption of liability" constituted both copyright infringement and a violation of the Illinois Deceptive Business Practices Act. Although we have held no live evidentiary hearing, we think the uncontested evidence submitted by the parties warrants such a conclusion.[13] The evidence shows that regardless of who breached the contract, Legat was the principal and perhaps only author of the Plans, yet Pines and USDC filed them with HUD and Lake County in a way which would suggest to any reasonable observer that Pines authored the Plans. These acts constitute copyright infringement. To establish a *prima facie* case of infringement, a plaintiff must show that it owns a valid copyright, and that defendant "copied" its work. *See, e.g., Atari, Inc.*, 672 F.2d at 614. Defendants have not disputed that the Plans are copyrightable, that Legat was at least their principal author or that he possesses a copyright. Defendants also admit that they "copied" the Plans. While much of their copying may well have been authorized by the contract, the copying at issue here—filing the copies with HUD and Lake County in a way that creates the impression that Pines was their sole creator—plainly exceeds the scope of the contract and thus was unauthorized copying in violation of the copyright laws. *See* 17 U.S.C. § 106(1) (owner of copyright has exclusive right to do and to authorize copying of the copyrighted work).

Alternatively, Legat P.C. is reasonably likely to prove that defendants' actions caused a "likelihood of confusion" and thus violated the Illinois Deceptive Business Practices Act.[14] Under that Act, one commits a deceptive trade practice when, in the course of business, he or she "causes likelihood of confusion or of misunderstanding as to the source ... of goods or services." Ill.Rev.Stat. ch. 121½, ¶ 312(2) (1983). The statute authorizes injunctive relief for "a

---

13. In cases where no conflict of material fact exists, a Court may issue an injunction, just as it may grant summary judgment in like circumstances. *See Walsh v. Local Bd. No. 10*, 305 F.Supp. 1274, 1279 (S.D.N.Y.1969), *overruled on other grounds, United States v. Cook*, 505 F.2d 1124 (7th Cir.1974); Wright & Miller, § 2950 at 490. We observe that this practice has risks, as Professors Wright and Miller point out. *Id.* at 492. However, we perceive no problem in this case. The professors criticize the situation where a court summarily converts a preliminary injunction into a final order. We have not done so. We are only finding here that the facts material to preliminary injunctive relief do not appear to be in dispute. Below we enter no formal order, and such an order, when entered, will be a preliminary one, which can be amended if necessary.

14. We do not address whether relief is warranted under the Lanham Act, as that is not necessary to decide the issue before us While likelihood of confusion is one element of a § 1125(a) violation, *see, e.g., Hooker v. Columbia Pictures Industries, Inc.*, 551 F.Supp. 1060, 1065 (N.D.Ill. 1982), effect on interstate commerce is also required, *see, e.g., Scotch Whisky Ass'n v. Burton Distilling Co.*, 489 F.2d 809, 811 (7th Cir.1973), and the parties have not discussed whether this element has been satisfied. Thus, we think it prudent not to rule on the basis of the Lanham Act. We express no opinion on the commerce issue.

person likely to be damaged by a deceptive trade practice." Ill.Rev.Stat. ch. 121½, ¶ 313 (1983). We think that it is quite likely that defendants' actions, whether meant to do so or not, caused "likelihood of confusion or of misunderstanding as to the source" of those Plans. Actual confusion need not be shown; only a "likelihood of confusion" is necessary. *See* Ill.Rev.Stat. ch. 121½, ¶ 312 (1983); *Filter Dynamics International, Inc. v. Astron Battery, Inc.,* 19 Ill.App.3d 299, 313, 311 N.E.2d 386, 397 (1974). While we are not certain that actual confusion has occurred or will occur, Legat's uncontested assertions that the Plans are accessible to the public and could be viewed by various contractors or future architects shows that confusion is reasonably probable. Injunctive relief is appropriate under the statute to defuse this likely confusion.

However, we are not inclined now to issue a formal remedial order for either the copyright or unfair competition claims. First, as we noted earlier, we will be confining such an order to clearing up confusion as to the creator of the Plans. While Legat surely was their principal creator, there is a dispute of material fact about whether Pines revised those Plans. An amendment to the Plans would ideally reflect accurately who the true author(s) is(are). We desire the parties' input on this point, since they have not really addressed the remedial terms we have proposed. Second, an order which merely amends the "cover sheets" and erases confusion as to authorship might not prove at all unpalatable to defendants. They may decide to consent to such an order, without waiving their other rights in this suit. Finally, much time has unfortunately passed since Legat, P.C.'s motion was filed. We think it prudent to hear from the parties whether any circumstances have changed in the interim before issuing an injunctive order.

To sum up, then, we agree in principle with Legat P.C. that it is entitled to some form of injunctive relief. The injunctive order should be limited to whatever is necessary to clear up any confusion as to the source and author of the Plans on file at HUD and Lake County. Impoundment of other Plans appears unnecessary at this time. The parties are ordered to meet within 14 days to discuss the form an injunctive order shall take and resolve concerns such as the ones raised in the previous paragraph. The proposed injunction order and a brief statement as to the parties' respective positions on the matters discussed above shall be filed with the Court on or before December 12, 1985.

### *Other Matters*

■ Defendants have also moved for summary judgment on the two contract counts, arguing that the contract was void for illegality. Legat P.C. has moved to strike this motion because that issue is currently in arbitration. We agree with Legat P.C. In an unpublished order last March, we granted *defendants'* motion to refer Counts I and II to arbitration. *See* n. 1 above. Once in arbitration, defendants raised this new argument that the parties' contract was illegal. Now defendants have jumped back into this forum and have pressed the contract issue on the Court. They cannot have it both ways. It was they who zealously argued for arbitration, and now it is they who zealously argue that we should short-circuit the arbitration. Although not saying so explicitly, defendants are essentially arguing that we should vacate our decision to refer the case to arbitration, but they have offered no good reason for doing so. The arbitrator, retired Justice Schaefer, is a nationally renowned jurist, and the defendants are lucky to have him.[15] They have stated no reason why we should deprive them of what they wanted so badly earlier in this case, a chance to exercise their contractual right to let Justice Schaefer arbitrate the contract dispute. We are confident that he will render an intelligent and fair decision.

---

**15.** Indeed, prudence might dictate that the parties consider resolving *all* remaining issues in their dispute quickly and promptly by submitting them to arbitration before Justice Schaefer.

Contrary to defendants' assertion, the outcome of the contract issue does not affect Legat P.C.'s right to injunctive relief on the other issues. We held earlier in our March 13 order that the contract counts are separate from and do not permeate the other counts. We stand by that holding. We do not agree with defendants that the alleged illegality of the contract bears on Legat P.C.'s request for injunctive relief. Even if defendants were correct that the contract is illegal, Legat P.C. would still deserve some form of injunctive relief. A void or voidable contract does not excuse defendants from passing off Legat's Plans as their own. And even if the contract were illegal or if Legat in fact breached a legal contract, he would not have "unclean hands" with respect to the injunctive relief we discussed above. " 'Ordinarily, the clean hands doctrine only applies when there is a direct nexus between the bad conduct and the activities sought to be enjoined.' " *Shondel v. McDermott,* 775 F.2d 859, 869 (7th Cir.1985), *quoting, International Union, Allied Industrial Workers v. Local Union No. 589,* 693 F.2d 666, 672 (7th Cir.1982). In this case, there is no such "tight connection between the object of the injunction and the [alleged] misconduct of the plaintiff." *Shondel,* at 869. Whether the contract is illegal or Legat P.C. breached it is separate from defendants' creation of confusion as to the authorship of the Plans. An injunction does not excuse or condone Legat P.C.'s misconduct, if any there be. It merely clarifies the public record as to the author of the Plans. In contrast, denial of the injunction would merely shield defendants' misconduct and leave intact a misleading public record. In sum, the resolution of the contract issues is largely separate from the other issues in this case. Thus, we grant Legat P.C.'s motion to strike defendants motion for summary judgment on Counts I and II.

### Conclusion

Defendants' motions to dismiss and for summary judgment are denied, the latter without prejudice. In so ruling, we express no opinion as to which party breached the contract or whether the contract is void for illegality. Legat P.C.'s request for injunctive relief is granted in principle, but a formal order will not be entered until after the parties have submitted their proposed form order and respective position papers as discussed herein. It is so ordered.