Orson WELLES, Appellant,

v.

COLUMBIA BROADCASTING SYSTEM, Inc., et al., Appellees.

No. 17518.

United States Court of Appeals Ninth Circuit.

Oct. 3, 1962.

Before CHAMBERS, Chief Judge, DUNIWAY, Circuit Judge, and TAVARES, District Judge.

TAVARES, District Judge.

This case was originally brought by appellant Welles as plaintiff in the Superior Court of the State of California in and for the County of Los Angeles, and was thereafter removed by appropriate proceedings to the United States District Court for the Southern District of California, Los Angeles, by reason of diversity of citizenship of the parties. For brevity, the appellee Columbia Broadcasting System, Inc., a corporation, is hereinafter referred to as "CBS", and appellee Westinghouse Electric Corporation, is referred to as "Westinghouse".

The case was tried without a jury upon the appellant's first amended complaint setting forth three alleged causes of action.

The first cause of action in substance claims that pursuant to a written agreement dated August 30, 1938, between appellant and Columbia Artists, Inc., a corporation no longer in existence, for the benefit of CBS, appellant as an independent contractor produced and directed a radio broadcast on October 30, 1938 (hereinafter referred to as the "radio show"); that appellant conceived, originated, devised and created the style of said radio show and is the co-author and proprietor of said radio show; that appellant never granted any rights to anyone to use said show, and that he is the sole owner of all common law rights therein and thereto. It is further alleged that the agreement was assigned to the appellee CBS by Columbia Artists, Inc., without appellant's consent; that appellees CBS and Westinghouse infringed appellant's alleged common law copyrights or other alleged common law rights in the said radio show, and were guilty of unfair competition by using and reproducing a portion of the radio show on a television show (hereinafter called the "television show" entitled "The Night America Trembled", which was telecast throughout the United States over the facilities

of CBS on September 9, 1957. Damages are alleged and sought for this alleged infringement and unfair competition.

The second cause of action claims that appellee CBS impliedly agreed not to show, copy, imitate or appropriate for its own benefit or for the benefit of anyone else the radio show; that appellee CBS breached said implied covenant by using for its own benefit, and causing appellee Westinghouse to use for its own benefit, portions of the radio show on the television show of September 9, 1957; and that as a result thereof appellant has been damaged.

The third cause of action alleges in substance that CBS had impliedly covenanted with appellant that the latter would have first opportunity to serve as producer, director and consultant in any production or adaptation of the said radio show, and that CBS had breached such implied covenant. Damages are prayed for such alleged breach.

The appellees deny any liability or damages, and justify their action on the principal ground that, not appellant, but one Howard Koch was the author and owner of the script and script rights upon which the radio show was based, and that appellees had secured proper authority from Koch for use of such script in the television show.

The lower court, by agreement of the parties, tried the issue of liability first and found in favor of the defendants appellees, and therefore no evidence was taken on the question of damages. The trial on the liability issue was held entirely upon depositions and written exhibits.

The trial court did not file a written decision but made oral rulings from the bench, as a result of which formal findings of fact and conclusions of law were duly entered. The findings of fact, being short, are quoted in the margin.[1]

We have carefully examined the record in this case, including the pleadings,

1. Findings of Fact.
"1. Plaintiff and Columbia Artists, Inc., a now defunct corporation, on August 30, 1938 entered into a written agreement, whereby plaintiff was employed to render his services in connection with the presentation of a series of dramatic radio programs.
"2. Pursuant to said contract there was broadcast on October 30, 1938, over the radio facilities of Columbia Broadcasting System, a dramatic adaptation of H. G. Wells' novel, 'The War Of The Worlds'.
"3. Plaintiff conceived the idea of presenting said radio broadcast of an adaptation of H. G. Wells' novel, 'The War Of The Worlds' and also conceived the idea of dramatizing said novel by means of radio announcements describing the contemporaneous invasion of Martians.
"4. The script for said radio broadcast was written by Howard Koch.
"5. Plaintiff acquired from Howard Koch the right to use such script on said radio broadcast, but Howard Koch retained all other rights therein.
"6. Although plaintiff made some minor changes and modifications in said script after it had been completed by Howard Koch, plaintiff was neither author nor a co-author thereof.

"7. Under date of February 5, 1940, Howard Koch duly authorized Princeton University Press in writing to publish said script in a work entitled 'The Invasion From Mars: A Study in the Psychology of Panic' by Hadley Cantril.
"8. Said work was published under copyright notice April 15, 1940; thereafter on May 17, 1940 two copies of said work were duly received by Copyright Office of the United States; and on May 16, 1940 the Affidavit prescribed by the Copyright Act was received by said Office.
"9. Plaintiff had prior knowledge of the publication and copyrighting of said script and permitted the same.
"10. During the seventeen years following said publication and copyrighting of said script by Princeton University Press, plaintiff made no effort to assert, defend, or recapture his claimed rights in said script although on several occasions he took legal counsel.
"11. On April 25, 1957 Howard Koch, for consideration and in writing, granted defendant Columbia Broadcasting System the right to use said script in a television play entitled 'The Night America Trembled', which was a documentary teleplay portraying the panic precipitated by said radio broadcast and was telecast over

the transcript of the entire trial in the course of which the depositions were read in evidence, the exhibits, and the authorities cited in the respective briefs of the parties. We have heard a tape recording of the radio show and viewed and heard a film and recording of the television show, which were exhibits in evidence.

On an appeal from the judgment of the lower court in a non-jury case, the findings of fact of the trial judge are to be given great weight, and will not be set aside unless clearly erroneous. F.R.Civ. Proc., Rule 52(a), 28 U.S.C.A.

The evidence fails to support the factual contentions of the appellant. On the contrary, it more strongly supports the findings of fact of the lower court. We find no reversible error in any of such findings of fact.

For example, it is contended by appellant, based upon his own deposition testimony, that the arrangement between appellant and Koch, the writer of the script for the radio show, was that of mere employer and employee, and that any rights in the script prepared by Koch were the property of appellant rather than Koch. However, it clearly appears from the depositions of both appellant and Koch, that appellant had no personal first-hand knowledge of the arrangement actually made between Koch and whoever employed him, and from Koch's deposition, that Koch dealt with one Houseman entirely and that the arrangement with Houseman was that, after a limited time, in view of the small fee paid Koch for writing the script all rights in the script would belong to Koch and not to appellant Welles. Nowhere in the record and evidence is there any intimation that Houseman was not available as a witness in behalf of appellant to contradict this testimony of Koch if it was untrue. Houseman was not called. Likewise, both depositions show that Paul Stewart, an employee or associate of Welles, had conferences with Koch in connection with the script, and might have thrown more light on the disputed facts, but he too was not called and there is no indication that he was not available as a witness. By his own admission, Welles' testimony as to what the arrangement with Koch was is hearsay and can hardly be used to contradict the positive testimony of Koch. This is illustrative of the many weaknesses in the appellant's case on the facts.

We now consider the conclusions of law of the lower court, all of which are assailed by appellant. These conclusions are stated in the margin.[2]

the television facilities of Columbia Broadcasting System September 9, 1957.

"12. Substantial portions of said script were read by defendant Columbia Broadcasting System's actors in said teleplay.

"13. There was, and could have been, no confusion between the performance of said script by plaintiff and the actors of the Mercury Theatre on said radio broadcast and the performance of parts thereof by defendant Columbia Broadcasting System's actors in said teleplay.

"14. Defendant Columbia Broadcasting System did not assume the duties, if any, owed plaintiff by Columbia Artists under said agreement of August 30, 1938."

2. Conclusions of Law

"1. The fact that said script embodies plaintiff's general conception referred to above entitles him to no relief against defendants for their use of said script.

"2. By virtue of the publication and copyrighting of said script by Princeton University Press in April 1940 with plaintiff's permission, any common-law copyright or property rights in said script which plaintiff might have previously had terminated and ceased to exist in all respects.

"3. Plaintiff is not entitled to relief against defendants on the ground of unfair competition by reason of their use of said script on said teleplay.

"4. Any rights which plaintiff might ever have obtained in said script or said broadcast devolved to Columbia Artists under said contract of August 30, 1938.

"5. Plaintiff in April 1940 abandoned whatever rights he might have had in said script.

"6. Plaintiff, by virtue of his conduct over the years, is now estopped to claim any rights in said script.

"7. Defendant Columbia Broadcasting System is not bound in any manner by said agreement of August 30, 1938.

"8. A covenant, promise, or agreement on the part of Columbia Artists, Inc.,

Our rulings on Conclusions of Law Nos. 1, 3, 8 and 9 are determinative of the merits of this case, and it will therefore be unnecessary to pass upon the others.

▮▮▮▮ Conclusion of Law No. 1 correctly states the rule that ideas per se are not copyrightable, but that the words or means of embodiment or expression of those ideas are.[3] And Conclusion of Law No. 3 to the effect that the use of the script by CBS in the television show entitled appellant to no relief on the ground of unfair competition is also sound for (a) appellant *did not own* the rights in the script; and (b) the television show was not a direct reproduction of the actual radio show, i. e., it was neither a transcript nor a photographic reproduction of the same performance, but was an entirely different performance with different actors, and much new matter. If the television show had been a re-run, let us say, of a movie taken of the Welles performance of the radio show, or a duplication of it, or if the same tapes or portions thereof used to record the radio show, or direct transcriptions thereof, had been used in the television show, possibly a case of unfair competition, other elements being assumed to exist, might have been made out. However, none of

these elements was proved. The same *script* was used, but the *rights in the script*, as above stated, as the lower court properly held, *did not belong to Welles.* Hence Welles could have no valid objection to the use of this script in putting on another entirely different performance, with entirely different actors. Of course, the unexpected results of panic created by the performance of the radio show were newsworthy events, which any person would be entitled to reproduce and to which Welles could have no exclusive right of reproduction in any event.[4]

Conclusions of Law Nos. 8 and 9 are entirely justified since a careful study of the Welles agreement of August 30, 1938 with Columbia Artists, Inc., discloses no such covenants as are claimed by appellant and there is no other competent evidence that would indicate or justify the implication of any such covenants.

While we are inclined to agree with the trial court that if the appellant had had any rights in the radio show which could be the subject of this action—that is, if Mr. Welles had owned rights in the script—there was a sufficient taking to constitute more than fair use, appellant's case must fail because he had no such rights.

For the reasons above stated, the judgment below is affirmed.

---

that it would not use, copy, imitate, or appropriate, or cause to be used, copied, imitated, or appropriated, said radio broadcast cannot be implied in said agreement of August 30, 1938.

"9. A covenant, promise, or agreement on the part of Columbia Artists, Inc., that in any production, adaptation, or revision of said radio broadcast plaintiff would have first opportunity to serve as producer, director and consultant cannot be implied in said agreement of August 30, 1938."

3. London v. Biograph Co. (2 Cir. 1916) 231 F. 696, 699; Emerson v. Davies (1845) 8 Fed.Cas. p. 615, 618–621, decision by Justice Story; Desny v. Wilder

(1956) 46 Cal.2d 715, 299 P.2d 257; Heckenkamp v. Ziv Television Programs, Inc. (1958) 157 Cal.App.2d 293, 321 P.2d 137; Columbia Pictures Corporation v. National Broadcasting Co., Inc. (S.D. Cal.1955) 137 F.Supp. 348; Lake v. Columbia Broadcasting System, Inc. (S.D. Cal.1956) 140 F.Supp. 707.

4. Lake v. Columbia Broadcasting System, Inc. (S.D.Cal.1956) 140 F.Supp. 707; Echevarria v. Warner Bros. Pictures, Inc. (S.D.Cal.1935) 12 F.Supp. 632; Desny v. Wilder (1956) 46 Cal.2d 715, 299 P.2d 257; Sherwood v. 20th Century-Fox Film Corporation (1940) 173 Misc. 871, 18 N.Y.S.2d 388.