**REAL ESTATE DATA, INC.,**
**Plaintiff-Appellee,**

v.

**The SIDWELL CO., and Sidwell Studio,**
**Inc., Defendants-Appellants.**

**No. 85–1938.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1986.
Decided Jan. 8, 1987.

P. Phillips Connor, Hill, Van, Santen, Steadman & Simpson, Chicago, Ill., for defendants-appellants.

Jerome H. Torshen, Jerome H. Torshen, Ltd., Chicago, Ill., for plaintiff-appellee.

Before CUDAHY and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

The primary question presented in this appeal is whether the district court erred in concluding that the party that commissioned the works in question, and not the independent contractor that created them, owns the copyrights to those works. For the reasons stated below, we will reverse and remand for further proceedings.

I

The primary facts, as found by the district court, relevant to the disposition of this appeal are the following:

Real Estate Data, Inc. ("REDI"), a Delaware corporation with its principal place of business in Florida, provides real-estate "ownership information" services to the real-estate and allied industries in various parts of the country. The Sidwell Company ("Sidwell"), an Illinois corporation with

its principal place of business in that state [1] prints and distributes real-estate and tax maps, including the official tax maps for Cook County, Illinois. The tax maps show the location and tax-roll numbers for each parcel of land within a given jurisdiction and the placement of streets and boundaries.[2] These maps are used primarily by local governments for assessment purposes. If the demand is sufficient, Sidwell markets the tax maps commercially.

The first contract negotiated between Sidwell and Cook County, Illinois, was signed on November 19, 1957. It provided for the purchase at $145,000 of more than 1600 maps covering the City of Chicago in accordance with samples previously provided by Sidwell. The agreement made no mention of copyright ownership. The samples submitted by Sidwell were delivered to the map department of the County Clerk's office in October of 1957 and bore a notice identifying Sidwell as the copyright owner. The final maps were delivered to the County in 1958. This contract is not contested in the instant case.

In November of 1958, Cook County advertised for bids on a county-wide tax-map project. The "specifications" for the project, as set forth in advertisements published on November 12, 13, and 14, 1958, contained no provision regarding the ownership of the copyright in the proposed maps. In response to the advertisement, Sidwell delivered a written proposal to the Cook County Board of Commissioners ("Board") on November 18, 1958. The proposal for the county-wide mapping project contained no provision reserving any copyright to Sidwell, nor did it express an intention on the part of Sidwell to obtain such a copyright.

After a public hearing, the Board agreed to enter into a contract with Sidwell, pursuant to which Sidwell would perform the mapping project for $425,000. The con-

tract to which the Board finally agreed was signed on January 26, 1959, and a purchase order from the County was issued on February .17, 1959. The contract did not reserve a copyright in the maps to Sidwell, and the absence of such a provision was known to Sidwell and its officers at the time of the contract's signing. The president of Sidwell testified that he did nothing to obtain a copyright clause in the contract because "in dealing with large municipal governments, you don't make those kinds of suggestions if you want to get anything accomplished or signed." The agreement did provide that the new maps would be in accordance with the "samples furnished," and, according to the testimony of Sidwell's witnesses, the samples submitted to the County bore a copyright notice identifying the contractor as the owner. Sidwell prepared the maps during 1959 and 1960.

On November 18, 1959, Sidwell and the County Clerk negotiated an agreement pursuant to which Sidwell would update the County maps every year or as required for an annual fee of $100. This agreement could be cancelled on 30–days notice. A document was drawn up to reflect that agreement and was later ratified by the Board. Again, no reference was made to the ownership of copyrights.

The Board's Journal of Proceedings (the official record of the transaction of business by the County's corporate authorities) shows that the Board approved Sidwell's proposal of November 18, 1959, and the contract of January 16, 1959, and that it ratified the updating agreement of November 18, 1959. None of the Journal entries mentions the copyrights for the maps, and the County's records disclose no other references to these contracts, nor to any vote or other action of the Board regarding the copyrights. There is no record of any vote or any other action of the Board concerning

---

1. Sidwell is the successor to Sidwell Studios, a sole proprietorship. Both the proprietorship and the successor corporation are referred to collectively herein as "Sidwell."

2. Pursuant to Ill.Rev.Stat. ch. 120, ¶ 511, the Cook County permanent parcel index numbered maps are public records. The master tax maps and the printed copies of updated maps are freely available in certain Cook County public offices for examination by the public.

modifications or amendments to these agreements.

Sidwell created the original tax maps on the County in accordance with the contract of January, 1959, and performed the necessary updating until 1965. After 1965, revisions were made by County employees. Sidwell has marketed the maps commercially since 1960. It has also registered copyrights in its own name, has printed a copyright notice on the original and updated maps it has distributed, and has otherwise continuously represented itself as the owner of the copyright for these maps since 1959. The County has never asserted any ownership interest in the copyrights for these maps, and has apparently done nothing in response to Sidwell's claim to ownership of these rights.

On July 20, 1978, REDI, a competitor of Sidwell, filed a two-count complaint against the appellant in federal district court.[3] Count I alleged that REDI and Sidwell had entered into a marketing agreement and that Sidwell had breached the contract with regard to royalty payments and the renewal of leases. Count II sought a declaration pursuant to 28 U.S.C. § 2201 that, *inter alia*, the copyrights registered by Sidwell for copies of the Cook County official maps and map books were invalid. Sidwell filed counterclaims for breach of contract and antitrust violations.

On October 20, 1980, REDI moved for summary judgment on Count II of the complaint. The case was referred to a magistrate, who recommended that the motion be denied. On September 30, 1981, the district court rejected this recommendation and invited the parties to file additional briefs on the copyright question. On June 8, 1982, the court denied REDI's motion for summary judgment.

On November 10, 1981, the current County Clerk filed, pursuant to an order of the trial court, a "Statement of Position," in which he stated that his joinder was "not needed for the just adjudication of the private dispute that forms the subject matter of this lawsuit, Fed.R.Civ.P. 19(a)." On March 9, 1984, the district court granted REDI's motion to sever the copyright claim and scheduled it for an immediate trial. Sidwell filed a motion for summary judgment on Count II on October 3, 1984, which was denied on October 25.

A bench trial on the issues not resolved in the pre-trial proceedings was held in February of 1985. The district court entered judgment in favor of REDI and against Sidwell on the copyright claim on April 11, 1985, and issued its memorandum decision on May 1. According to that order, the copyrights Sidwell claimed for "the Cook County official tax maps and books and all registrations thereof with the Register of Copyrights" were declared invalid and Sidwell was directed to notify "the Register of Copyrights to cancel all such registrations now on record in the United States Copyright Office." Although this judgment did not resolve all of the pending claims in this action, the court pursuant to Fed.R.Civ.P. 54(b) found that there was no just reason for delay of the entry of final judgment on the claims raised in Count II of REDI's complaint and entered final judgment on that count.[4] This appeal followed.

## II

### A. Applicable Law

■ The federal copyright statutes were extensively revised in 1976 by Pub.L. No. 94–553, 90 Stat. 2541, codified at 17 U.S.C. §§ 101–810 ("1976 Act"). The relevant pro-

---

3. The statutory sources of the district court's subject-matter jurisdiction are 28 U.S.C. §§ 1331, 1332, and 1338.

4. Contrary to the requirements of Rule 58, the district court failed to enter the Rule 54 certification on a separate document. However, we find that this omission does not preclude this court from exercising jurisdiction over this ap-

peal. *See Lac Courte Oreilles Band v. Wisconsin,* 760 F.2d 177, 181 (7th Cir.1985); *Alexander v. Chicago Park District,* 773 F.2d 850 (7th Cir. 1985); *Local P–171 v. Thompson Farms Co.,* 642 F.2d 1065, 1071 (7th Cir.1981). In addition, we hold that, given the nature of the claims at issue in the instant action, the certification was proper. *See Local P–171,* 642 F.2d at 1071–72.

visions of the 1976 Act went into effect on January 1, 1978.[5] The events at issue here, however, occurred almost two decades before that date, so there is a threshold question whether the 1976 Act applies to the claims presented in this case. We agree with the Second Circuit's decision in *Roth v. Pritikin,* 710 F.2d 934, 937–40 (2d Cir.), *cert. denied,* 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983), that the 1976 Act does not have retroactive application[6] and thus affirm the lower court's ruling that the law in effect at the time the contract in question was signed, *i.e.,* the Copyright Act of 1909 ("1909 Act"),[7] provides the rule of decision in this dispute.

■ Prior to the 1909 Act, the federal judiciary had developed a "work for hire" doctrine, under which it was presumed that if an employee created a copyrightable work in the course of his employment, the copyright to the work would vest in the employer. *See Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460 (1903) (Holmes, J.); *Dielman v. White,* 102 F.2d 892, 894 (C.C.Mass. 1900); *cf. Gill v. United States,* 160 U.S. 426, 16 S.Ct. 322, 40 L.Ed. 480 (1896). The 1909 Act provided protection for the "authors" of copyrights, and defined "author" to include an employer in the case of "works made for hire." 17 U.S.C. § 26 (1976). This provision has been interpreted by the courts as a codification of the work-for-hire doctrine. The general rule is that, in the absence of an agreement to the contrary, the copyright belongs to the person commissioning the work, not the person creating the work. *See Roth v. Pritikin,* 710 F.2d 934 (2d Cir.), *cert. denied,* 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337

(1983); *May v. Morganelli-Heumann & Assoc.,* 618 F.2d 1363 (9th Cir.1980); *Murray v. Gelderman,* 566 F.2d 1307 (5th Cir. 1978); *Brattleboro Publishing Co. v. Winmill Publishing Corp.,* 369 F.2d 565 (2d Cir.1966); *Lin-Brook Builders Hardware v. Gertler,* 352 F.2d 298 (9th Cir.1965); *Official Aviation Guide Co. v. American Aviation Associates, Inc.,* 150 F.2d 173 (7th Cir.1945), *cert. denied,* 326 U.S. 776, 66 S.Ct. 268, 90 L.Ed. 469 (1945); *Yardley v. Houghton Mifflin Co.,* 108 F.2d 28 (2d Cir.1939). The rule applies to independent contractors, as well as employees. *Brattleboro Publishing Co.,* 369 F.2d at 568; *Picture Music, Inc. v. Bourne, Inc.,* 457 F.2d 1213, 1216 (2d Cir.1972).

■ The work-for-hire doctrine of the 1909 Act does not foreclose an agreement between the parties that the contractor shall own the copyright, but rather it simply establishes a rebuttable presumption that can be overcome by evidence of a contrary agreement, either written or oral. *Roth,* 710 F.2d at 937 & n. 3; *Scherr v. Universal Match Corp.,* 417 F.2d 497, 500 (2d Cir.1969); *Welles v. Columbia Broadcasting System,* 308 F.2d 810, 813 (9th Cir.1962). The intent of the parties is, obviously, the decisive factor, and the burden is on the independent contractor to demonstrate by a preponderance of the evidence that such an agreement was reached. *May,* 618 F.2d at 1369; *Yardley,* 108 F.2d at 31; *cf. Dielman,* 102 F. at 894.

The primary question under the work-for-hire doctrine is whether Sidwell has shown that the parties to the 1959 contracts for the production and updating of tax maps for Cook County agreed that

---

5. *See* Pub.L. No. 94–553, § 102, 90 Stat. 2598, codified at 17 U.S.C. note preceding § 101; *see also id.* § 101, 90 Stat. 2572, codified at 17 U.S.C. § 301.

6. *See also May v. Morganelli-Heumann & Assoc.,* 618 F.2d 1363, 1368 n. 4 (9th Cir.1980); *see also Sargent v. American Greetings Corp.,* 588 F.Supp. 912 (N.D.Ohio 1984); *Everts v. Arkham House Publishers, Inc.,* 579 F.Supp. 145 (W.D. Wis.1984).

The provisions of the 1976 Act that govern the work-for-hire doctrine are contained in § 101,

90 Stat. 2541, 2568, codified at 17 U.S.C. §§ 101, 201. Under 17 U.S.C. § 201(b) (1982), the employer is considered the author for the purposes of Title 17 and, unless the parties have expressly agreed to the contrary in a written instrument signed by them, the person for whom the work was prepared owns all rights embodied in the copyright.

7. Act of Mar. 4, 1909 ch. 320, 35 Stat. 1075 (formerly codified at 17 U.S.C. §§ 1 et seq.).

Sidwell would own the copyright to these works. The district court found that Sidwell failed to make such a showing. As the discussion below indicates, we are not convinced by the district court's decision and will remand for further proceedings.

### B. Agreements Between Sidwell and Cook County

■ It is undisputed that the county's advertisement for the map project, Sidwell's proposal for the project, the contract of January 26, 1959 for the tax maps, the subsequent agreement for the updating of those maps, and the County's Journal of Proceedings make no mention of copyrights. Sidwell was aware of the language of these agreements and yet did nothing to have copyright clauses included in the contract because, as the president of the company testified, "you don't make those kinds of suggestions if you want to get anything accomplished or signed." The silence of these documents, considered only in conjunction with the presumption of the work-for-hire doctrine, would establish that the County retained all copyrights to these works.

Sidwell, however, maintains that it had an oral "side deal" with Edward Barrett, who was then the Clerk of Cook County, that Sidwell would retain ownership of the copyrights for the original and updated maps. The district court concluded that such an agreement, if it existed at all, would not bind the County. On appeal, Sidwell contests this ruling.

Public contracts with Cook County that exceed $1,000 are "null and void" unless approved by the Board. Ill.Rev.Stat., ch. 34, ¶¶ 951, 1001. There is no serious argument that the copyrights in question had a value of less than $1,000. Sidwell's own expectation that it would derive a profit from the commercial sale of copies of the maps demonstrates that these rights were worth in excess of that amount. Thus, Barrett did not have the authority to enter into this agreement on his own, *see County of Stephenson v. Bradley & Bradley,* 2 Ill.App.3d 421, 275 N.E.2d 675, 677–78 (2d Dist.1971); *Moffett v. Hicks,* 229 Ill.App. 296, 306 (3d Dist.1923), and Sidwell is charged with knowledge of the limits of Barrett's authority, *Pauly v. County of Madison,* 288 Ill. 255, 260, 123 N.E. 281 (1919). Of course, like the 1959 contract for updating the maps, the County could have ratified the Barrett agreement regarding copyrights and thus would have eliminated the legal deficiencies resulting from Barrett's lack of authority under Illinois law. Sidwell, however, failed to demonstrate that the Board was informed of this oral "side deal," much less that it ratified the arrangement. Thus, Sidwell's reliance on that agreement is unavailing, because it was invalid as a matter of Illinois law.[8]

### C. Incorporation of Map Samples

■ Sidwell maintains that, in responding to the advertisement for the Cook County mapping project, it submitted sample maps to which a notice identifying Sidwell as the copyright owner was affixed. Although Sidwell has conceded that the written contracts with the County did not address copyright ownership and that it did not attempt to have the contracts reflect that it was the copyright owner, it nonetheless argues that the sample maps were incorporated by reference into the contract and that, as a result of this incorporation, the County agreed that Sidwell held the copyrights for these maps. We concur in the district court's conclusion that this argument is unavailing.

---

8. Sidwell's contention that Barrett had the apparent authority to enter into this "side deal" on behalf of the County is unavailing. Illinois follows the general rule that it is the actions of the principal, not the agent, that confer apparent authority upon the agent. *See Barraia v. Donoghue,* 49 Ill.App.3d 280, 283, 7 Ill.Dec. 661, 663, 364 N.E.2d 952, 954 (1st Dist.1977). Even if we assume *arguendo* that Barrett was authorized to *negotiate* contracts for the County, Sidwell has still not shown that the county expressly or impliedly authorized Barrett to *enter into* a contract on behalf of the County granting to Sidwell the copyrights for these maps that would not require the approval of the Board.

The agreement of January 26, 1959 was a printed form entitled "Contract With The County of Cook." A description of the map project was typed in the appropriate blank spaces. Part of the printed "boiler plate" provides:

It Is Agreed that the performance of this contract by [Sidwell] shall be in strict compliance with the advertisement of the County, the proposal of [Sidwell], and the specification relative thereto, the samples furnished and demonstrations made, if any, and the cuts, maps, drawings, illustrations and descriptions submitted or furnished, if any, all of which documents and things are on file in the office of the Purchasing Agent of Cook County and are hereby made a part of this contract.

The contract does make the "samples" a "part" of the contract, and REDI has not argued that the maps submitted were not "samples" within the meaning of this provision. However, it would be unusual in the extreme to conclude that this general language regarding "specifications" in a form contract that could apply to the County's purchase of any "goods, wares and merchandise and material" and that makes no mention of, for example, copyright, patent, or trademark laws was meant to transfer ownership of the copyrights in question to Sidwell. Indeed, the only sensible reading of this provision is that the *independent contractor* is required to provide the County with "goods, wares and merchandise and material" that conform to the samples submitted in the proposal process.[9] It in no way suggests that the legal rights of the parties are to be determined by the copyright notices unilaterally affixed to those samples by the contractor. *See Brattleboro Publishing Co. v. Winmill Publishing Corp.*, 369 F.2d 565, 568 n. 3 (2d Cir. 1966). Furthermore, it is not clear that Sidwell was entitled to copyright its sample maps, because they were created pursuant to an earlier contract with the County that was silent on the subject of copyright ownership. In conclusion, then, we find that the "incorporation" of the samples into the contract does not show an agreement on the part of the parties that Sidwell was to own the copyrights for the tax maps.

### D. The County's "Acquiescence"

As previously noted, Sidwell placed copyright notices on all the maps created pursuant to the 1959 contracts, and it has from 1957 to the present marketed the tax maps it created for the County. Sidwell attempted to show below that, in response to an alleged plan by the County in 1960 to market copies of the maps, Sidwell sent a letter to the Chief Clerk of the Cook County Map Department and to the County Clerk protesting this potential infringement of Sidwell's alleged copyrights. The letter to the Map Department stated that the County could copy the maps for its own use only. It would appear that, after the receipt of these letters, the County did not market the maps and that it in fact made copies only for its own use.

Sidwell argues that this conduct on the part of the County, along with other evidence, shows that it was the original intent of the parties that Sidwell own the disputed copyrights.[10] In ruling on REDI's motion

---

**9.** This conclusion is supported by other language in the contract:

It Is Further Agreed that any and all goods, wares and merchandise and material to be delivered by [Sidwell] and any and all work to be done by [Sidwell] shall be satisfactory to the Purchasing Agent of Cook County, who shall have the right to inspect, accept or reject the same or any part thereof.

. . . .

It Is Agreed that if [Sidwell] shall fail, refuse or neglect to supply, furnish or deliver the said goods, wares and merchandise, or material or work at the time or times and place or places and in the quantity and quality as provided in said agreement and said proposal and this contract, or as may be directed by the Purchasing Agent of Cook County, then the said County, upon giving to [Sidwell] three (3) days' notice of its intention so to do, shall have the right to declare this contract forfeited and at an end. . . .

**10.** Sidwell does not argue that the County either abandoned or forfeited any copyright interest it may have had in the maps. Of course, a forfeiture or abandonment by the County would not benefit Sidwell, because under the 1909 Act an

for summary judgment, the district court concluded:

> [T]here is no specific evidence that the Board was ever informed about the copyrights.... Nevertheless, considering the long period of time during which [Sidwell] has openly and notoriously asserted its ownership of the copyrights and all other undisputed facts, it is possible that the trier of fact could infer that it was the original intention of the parties that [Sidwell] was to own the copyrights....

REDI's motion was, therefore, denied.

In its ruling on Sidwell's motion for summary judgment, the district court found that long-term acquiescence did not allow a party to the contract to claim a specific construction as a matter of law. Thus, Sidwell's motion was denied and the case proceeded to trial.

The lower court's decision issued after the bench trial stated that one of the issues to be resolved was "whether the course of conduct of the Cook County Board over the years evinces an original intention that Sidwell should own the copyrights in issue." Much of the ensuing discussion, however, addressed the Barrett agreement, the silence of the contracts and other documents on the copyright question, and the lack of direct evidence that the County had been informed about Sidwell's claim of copyright for over twenty years, and there was no mention of certain facts (such as the 1960 letters or the County's apparent compliance therewith) supporting Sidwell's claims. The court concluded that the County never "ratified" Sidwell's assumption of the copyrights and that, in the absence of any *express* provision for copyrights in Sidwell's written agreements with the County, Sidwell's copyrights were invalid. Having found neither a ratification nor an express agreement, it entered judgment in favor of REDI.

■ We are troubled by the district court's findings for several reasons. One problem is that it would appear that the court applied an incorrect legal standard. Under the work-for-hire doctrine of the 1909 Act, an independent contractor is not required to show that there was an *express* agreement regarding copyrights. In keeping with general contract principles, the presumption that the party commissioning the work is to retain these rights can be rebutted by the conduct of the parties in the absence of a written assignment. *See, e.g., Jerry Vogel Music Co. v. Warner Bros., Inc.*, 535 F.Supp. 172 (S.D.N.Y.1982); *see also* 1 M. Nimmer, *Nimmer on Copyright* § 5.03[B] at 5–22.1 (1986 ed.). Stated in another manner, the parties' "course of performance" may be considered in interpreting a contract calling for the creation of a copyrightable work. *Cf. Restatement of Contracts* 2d § 203 (1979); Ill.U.C.C. §§ 2–202 & comment 2, 2–208 & comment 2. As the courts of Illinois have observed, "[T]here is no more convincing evidence of what the parties intended by their contract than to see what they did in carrying out its provisions." *Department of Revenue v. Jennison-Wright Corp.*, 393 Ill. 401, 408, 66 N.E.2d 395, 399 (1946); *see also Lenzi v. Morkin*, 103 Ill.2d 290, 82 Ill.Dec. 644, 469 N.E.2d 178 (1984); *In re Estate of Hayden*, 61 Ill.App.3d 815, 19 Ill.Dec. 130, 378 N.E.2d 631 (3d Dist.1978); *New York Central Development Corp. v. Byczynski*, 95 Ill.App.2d 474, 238 N.E.2d 414 (3d Dist. 1968).

■ The district court, no doubt hampered in its efforts by the unfocused presentation of the parties, seems to have reversed the temporal perspective. Interpretation by conduct is to be distinguished from ratification or waiver. In the former case, events subsequent to the signing of the contract may reveal the parties' original intention at the time the agreement was entered into; in the latter, subsequent events may indicate that the parties have

---

assignment of the County's copyright must be in writing. *See* 17 U.S.C. § 28 (1976) (repealed by 1976 Act); *Gardner v. Nizer*, 391 F.Supp. 940, 942 (S.D.N.Y.1975). Under the facts of this case, then, there would be no assignment to Sidwell, and the maps would be in the public domain.

altered that initial agreement. Sidwell's argument concerning acquiescence does not relate to waiver or ratification and obviously cannot supply an express term to the contract in question. It would appear then that the district court, in requiring a ratification or an express agreement, applied the wrong legal standard in considering the conduct of the County and Sidwell during the performance of these contracts.

We also do not know how the district court resolved certain factual disputes or what weight was assigned to certain evidence. First, there was no definitive finding that the contract between Sidwell and the County constituted either a partial or total "integration" of the parties' agreement. The agreement for the map project was surprisingly brief given the size and complexity of the undertaking. The relative weight accorded other facts would change depending on the status of the written contract. Second, the district court's order did not discuss either the letters sent to the County in 1960 regarding Sidwell's copyright claims or the County's subsequent conduct. Third, there was no mention of Sidwell's argument regarding the amount of consideration. The defendant did not contend that the sums paid to Sidwell were insufficient consideration, but rather that they reflected the parties' understanding that the contractor, and not the County, would own the copyrights. *See Welles*, 308 F.2d at 813 (size of fee considered in determining intent of parties regarding copyright ownership). It would not necessarily be irrational for the County (which is not in the commercial publishing business) to allow Sidwell to hold those rights. Indeed, an assignment of ownership to the defendant would lower the purchase price, thereby reducing the burden on the state treasury. Fourth, there was no mention of the fact that, under the 1959 contract, the Purchasing Agent for the County was required to "inspect, accept or reject" the maps produced by Sidwell and no discussion of any effect this procedure may have had for placing the County on notice regarding Sidwell's assertion of copyright ownership. Finally, there was

no analysis of the County's rather remarkable insouciance about any copyright interest it may have in the maps and about the instant litigation. Indeed, the County has been content to allow REDI, a stranger to the 1959 contracts, to represent its position. The County's marked indifference may provide indirect evidence of the parties' original intent.

We in no way mean to prejudge the outcome, but, under the facts of this case, we cannot definitively review the district court's judgment without the benefit of its views on the evidence and arguments described above. Therefore, we will reverse the judgment and remand for further proceedings.

### E. Evidentiary Rulings

#### 1. "Verbal Acts"

■ The district court excluded on hearsay grounds certain out-of-court statements offered by Sidwell. The appellant now argues on appeal that this was an error, because the testimony was not offered to prove the truth of the matter asserted, but to show that statements concerning copyrights were made by County personnel during contract negotiations. Sidwell claims that this evidence of "verbal acts" should have been admitted, not to show the intent of the parties, but to show that employees of Sidwell heard certain statements from the agents of the County and that these statements account for certain actions taken by Sidwell and for the lack of any copyright provision in the final contract.

"Verbal acts" may, of course, come in as an exception to the hearsay rule. However, the question in this case involves the intent of the parties to the 1959 contracts. If Sidwell is not offering this evidence for the truth of the matter asserted, then it serves no purpose, as it in no way illuminates the intent issue. This evidence can at best only show a unilateral assumption on the part of Sidwell regarding the County's position on copyright ownership, not an agreement between the parties on the copy-

rights. Thus, even if the district court erred in excluding the testimony, that error was harmless.[11]

## 2. Parol Evidence

Citing the parol-evidence rule, the district court ruled that evidence of statements made during negotiations for the 1959 contracts was inadmissible. As noted above, the agreements in question were silent on the question of the copyrights. Thus, Sidwell was offering these statements to supplement, not modify or contradict, the written terms of the agreements.

■ Parol evidence may be admitted to establish the original intentions of the parties with respect to copyright ownership. *See May v. Morganelli-Heumann & Associates*, 618 F.2d 1363, 1369 (9th Cir.1980). However, without a ruling from the district court that these contracts represented either a partial or total integration, we cannot evaluate the rulings of inadmissibility on the basis of the parol-evidence rule. The lower court, if it determines that the contracts were not a total integration, should reconsider its rulings on this evidence. We, however, can express no opinion on them at this time.

## 3. Deposition Testimony

■ At trial Sidwell sought to offer as part of its case excerpts of the depositions of four of its officers. The district court refused to consider them. Sidwell now argues that this exclusion was improper. We disagree. Sidwell on appeal refers us only to several statements from a deposition given by Mr. Rex, an officer of the company.[12] Even if these declarations had been admitted into evidence, they would in no way undermine the final decision of the

district court. Thus, if their exclusion was error, it was harmless.

## F. Remaining Arguments

### 1. Updated Maps

As noted above, Sidwell, pursuant to a written contract entered into in 1960, updates the County maps for an annual fee of $100. The district court found that "Sidwell has neither contracted for nor obtained a copyright from Cook County for the updated tax maps." In addition, it concluded that, since 1965 or 1963, Sidwell has performed no original work in updating the maps. On appeal, Sidwell argues that these rulings are erroneous.

Because we are remanding for further consideration of the effect of the conduct of the contracting parties, we cannot now review the district court's rulings on the updated maps. Of course, if upon reconsideration the court again finds that under the work-for-hire doctrine the County retains ownership of the copyrights, there is no need to determine whether Sidwell has or has not been providing an original contribution to the updated maps. If, however, the County does not own the copyrights to the updated maps, then the nature of the updating work done by Sidwell must be considered. As we cannot speculate on the outcome of the decision on remand, we express no opinion on the originality question.

### 2. Renewal Rights

■ In its briefs to this court, Sidwell maintained that the district court failed to distinguish between the original copyrights and the rights to renew the original copyrights. The best explanation for the lower court's failure to segregate the two is that Sidwell (as it conceded at oral argument

---

**11.** Sidwell also claims that out-of-court statements attributed to Sidwell's founder were improperly excluded. However, Sidwell did not support this contention with legal argument. *See* Fed.R.App.P. 28(a). We, therefore, will not consider it.

**12.** In its *reply* brief, Sidwell cites to additional passages from the depositions of other officers.

However, an appellant's argument is to be made in its *opening*, not its reply, brief. We perceive no reason why Sidwell could not have included in its first brief argument about these passages from depositions of the other officers. Accordingly, the reference to depositions not listed in the initial memorandum are not open to review in this appeal.

before this court) did not raise the renewal issue below. It, therefore, cannot be raised on appeal. *See City of Chicago v. United States Department of Labor,* 753 F.2d 606, 607 n. 3 (7th Cir.1985).

### III

To summarize, we find that the district court correctly concluded that Sidwell did not demonstrate by direct evidence that it had an agreement with the County regarding the disputed copyrights. However, Sidwell has offered indirect proof, in the form of the course of performance of the County and Sidwell, that could shed light on the original intent of those contracting parties. To be sure, there is much conflicting evidence and we could arrive at different conclusions from the facts in the record. Our role, however, is to review the findings and conclusions of the district court, not to arrive at our own decision *de novo.* The lower court's order does not provide us with information sufficient to accomplish that review. The case, then, is REVERSED and REMANDED for further proceedings consistent with this opinion. Circuit Rule 18 shall not apply.