**REAL ESTATE DATA, INCORPORAT-
ED, Plaintiff–Appellee,**

v.

**SIDWELL COMPANY and Sidwell
Studio, Incorporated,
Defendants–Appellants.**

Nos. 89–2427, 89–3562.

United States Court of Appeals,
Seventh Circuit.

Argued June 4, 1990.

Decided July 25, 1990.

Rehearing Denied Sept. 14, 1990.

Jerome H. Torshen, Mark K. Schoenfield, James K. Genden, Torshen, Schoenfield & Spreyer, Chicago, Ill., for plaintiff-appellee.

P. Phillips Connor, Robert M. Barrett, Anthony R. Chiara, James Van Santen, Richard J. Schwarz, Kay E. Rickelman, Hill, Van Santen, Steadman & Simpson, Chicago, Ill., for defendants-appellants.

Before BAUER, Chief Judge, and CUMMINGS and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff Real Estate Data, Incorporated ("REDI") is a supplier of real estate ownership information to real estate and allied industries. The Sidwell Company ("Sidwell") prints and distributes real estate and tax maps, including the official tax maps for Cook County in Illinois. This suit commenced with REDI's filing a two-count complaint in July 1978. Count I alleges breach of a contract between REDI and Sidwell and is not at issue in this appeal because it has not been resolved before the district court. In Count II REDI asserts that Sidwell's copyrights on official Cook County maps are invalid. A bench trial on the Count II issues that were not resolved in pre-trial proceedings was held in February 1985. In May 1985 Judge Norgle hand-

ed down a memorandum opinion and order holding that Sidwell's copyrights on the Cook County official tax maps were indeed invalid because the County never relinquished those rights. The case was then appealed to this Court, which remanded the cause to the district court for further findings. *Real Estate Data, Inc. v. Sidwell Co.*, 809 F.2d 366 (7th Cir.1987). Upon remand the district court entered additional findings of fact and conclusions of law in favor of REDI (appealed here in our No. 89–2427). A year thereafter it denied a preliminary injunction to Sidwell (appealed in our No. 89–3562). Both decisions have been consolidated for review and are now affirmed.

## I.

The history of this dispute over the validity of Sidwell's claim to the copyrights was fully stated in our prior opinion and need not be completely restated. In November 1957 Sidwell and Cook County entered into their first contract providing for the County to purchase from Sidwell 1,000 maps covering the City of Chicago for $145,000. Samples had been provided by Sidwell identifying it as the copyright owner and were submitted to the County in October 1957. However, the sample maps were not mentioned in the contract.

In November 1958, Sidwell and Cook County commenced negotiations for a county-wide tax map project. The proposal submitted by Sidwell on November 28, 1958, did not grant any copyright to Sidwell nor reveal its intention to obtain a copyright on those maps. On January 26, 1959, the parties agreed upon a contract for Sidwell to perform the mapping project for $425,000. The contract contained no copyright clause and Sidwell's president testified with admirable candor that he did not attempt to bargain for such a clause because "in dealing with large municipal governments, you don't make those kinds of suggestions if you want to get anything accomplished or signed." The sample maps submitted to the County bore a copyright identifying Sidwell as the owner but again were not incorporated into the contract.

On November 18, 1959, Sidwell and the County Clerk negotiated an agreement for Sidwell to update the county maps annually or as required for an annual fee of $100. This agreement was ratified by the Board without any reference to the ownership of copyrights. None of the journal entries of the Board's proceedings nor other records mention the copyright for the maps.

At the end of the first trial, Judge Norgle determined that there was no evidence to show an agreement by the County to give Sidwell the copyrights to the original or updated tax maps and found nothing in the County records that showed that Sidwell was the owner of the copyright or had the authority to affix its copyright notice to the maps. He held that under the Copyright Act of 1909 (35 Stat. 1075), the copyright would remain with the commissioning party, here the County Board, in the absence of a contrary agreement, and that there was no evidence of such an agreement. There is no question that the Copyright Act of 1909, and not the extensive revisions passed in 1976, applies to this case. See *Stewart v. Abend,* —— U.S. ——, 110 S.Ct. 1750, 1769 n. 1, 109 L.Ed.2d 184 (Stevens, J., with Rehnquist, C.J., and Scalia, J., dissenting).

On appeal we agreed that under the work-for-hire doctrine incorporated in the 1909 Act, the County, as the employer of Sidwell, was presumed to be the owner of the copyright with the burden on Sidwell to demonstrate a contrary intention. *Real Estate Data, Inc.,* 809 F.2d at 371; see also *Community for Creative Non–Violence v. Reid,* —— U.S. ——, 109 S.Ct. 2166, 2175, 104 L.Ed.2d 811; *Official Aviation Guide Co. v. American Aviation Assocs., Inc.,* 150 F.2d 173 (7th Cir.1945), certiorari denied, 326 U.S. 776, 66 S.Ct. 268, 90 L.Ed. 469. But the Court noted that under the work-for-hire doctrine the presumption that the County Board was to retain the copyrights "can be rebutted by the conduct of the parties in the absence of a written assignment." *Real Estate Data, Inc.,* 809 F.2d at 374. This Court thought that the district judge had not sufficiently interpreted the events subsequent to the signing of

the 1959 contract and held that it needed further information in order to resolve the controversy. *Id.* at 374–375.

After further briefing by the parties, the district court in its July 25, 1988, memorandum opinion and order responded to our mandate, finding in REDI's favor with respect to the copyright ownership. The district court found that the January 26, 1959, contract between Sidwell and the County Board was totally integrated and deliberately did not provide that the County Board was granting a copyright in the tax maps to Sidwell. It rejected Sidwell's claim that a copyright notice on the maps showed that the County Board intended to give Sidwell its copyright in the maps. The following are summaries of the district court's findings with respect to the five specific areas highlighted in our mandate, each of which supports the district court's conclusion that the County did not intend to relinquish the copyrights. *Id.* at 375.

1. The 1959 contract was totally integrated. It did not by its express terms or implied meaning give Sidwell the copyright. Sidwell did not secure any language in the contract to give it ownership of the copyright because it knew that the County Board would not sign such a contract. Sidwell has failed to present any evidence that the County Board agreed that it was to have the copyright to the tax maps.

2. Letters sent by Sidwell to the County in 1960 regarding Sidwell's copyright claims or the County's subsequent conduct appeared to have no effect on the County Board's view of the copyright. The second reason for the remand was that the 1987 order of the district court did not discuss these letters. *Real Estate Data, Inc.,* 809 F.2d at 375. The district court found, however, that these letters were sent to lower echelon employees of the County Board. Nothing showed that County Board members ever saw these letters and, in fact, Sidwell does not claim that they did. Therefore, they shed no light on copyright ownership.

3. The amount of consideration paid to Sidwell did not suggest that Sidwell was intended to get the copyright. The payment of $425,000 was certainly substantial and in addition Sidwell was permitted to market the official tax maps. The County itself provided the updating work on the maps and Sidwell lowered its original bid requesting $460,000 for the project because it felt that bid was too high to be accepted. The fact that Sidwell may have lost 10% on the work was not found to demonstrate that the County Board gave a valuable property copyright absent language to that effect in the contract.

4. Even though the County's purchasing agent was meant to inspect the maps, that did not place the County on notice regarding Sidwell's assertion of copyright ownership because there was no showing that she inspected the maps or discussed them with any member of the County Board. She was not produced as a witness. Nothing in the record showed that she even knew of Sidwell's copyright claims.

5. The County Board did not acquiesce in Sidwell's copyright claims. There was no evidence to show that any member of the County Board was aware that Sidwell had been applying for copyrights on the tax maps and had been affixing copyright notices on them. The Clerk of the County Board testified that the copyrights belonged to the County.

## II.

While Sidwell again relies on an oral "side deal" with then Cook County Clerk Edward J. Barrett that Sidwell did receive ownership of the copyright for the original and updated maps, we concluded on the prior appeal that Barrett did not have authority to enter into such an agreement and that the Board never ratified it, so that "it was invalid as a matter of Illinois law." *Real Estate Data, Inc.,* 809 F.2d at 372 & n. 8. We also held that sample maps were not incorporated into the contract and did not show that Sidwell was to own the copyrights. *Id.* at 373. There is also no need to consider Sidwell's arguments that in view of its original contribution to the maps a copyright for the updated maps belongs to it. As we noted in the original appeal, "upon reconsidera-

tion the [district] court again * * * [found] that under the work-for-hire doctrine, the County retains ownership of the copyrights." *Id.* at 376.* Any renewal rights would remain with the County. *Picture Music, Inc. v. Bourne, Inc.*, 457 F.2d 1213, 1215–1216 (2d Cir.1972), certiorari denied, 409 U.S. 997, 93 S.Ct. 320, 34 L.Ed.2d 262.

The district court's findings on remand are not clearly erroneous. Those findings make it perfectly clear that Sidwell has failed to produce written or testimonial evidence of statements or conduct that could overcome the rebuttable presumption that the County retained the copyrights at issue instead of granting them to the independent contractor it hired.

## III.

■ Turning to the preliminary injunction, the district court denied Sidwell's request in October 1989 to prevent REDI from competing with it in the marketing of copies of the most recent updated tax maps of Cook County. Such injunctive relief was properly denied principally because, as held above, Sidwell is not entitled to copyrights on these maps. If it prevailed on the merits, Sidwell would be adequately compensated by a monetary award. Similarly, award of a copyright to Sidwell through an injunction would appear to harm the public interest in light of the importance of keeping County records available for inspection or copying by the public. Therefore, the district court did not abuse its discretion in denying the requested relief.

## IV.

For the foregoing reasons, judgment for plaintiff is affirmed in No. 89–2427. Order denying preliminary injunction also affirmed in No. 89–3562.

---

* Sidwell maintains that the trial court should not have excluded expert testimony, but we previously held that the trial court need reconsider this exclusion only "if it determines that the contracts were not a total integration." *Real*

*Estate Data, Inc.*, 809 F.2d at 376. The trial court determined that the map contracts were a complete expression of the agreement between Sidwell and the County and we agree with that determination.