42 F.3d 1392
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Ralphael OKORO, Defendant/Appellant.
 No. 94-2096.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 16, 1994.
Decided Dec. 12, 1994.
 
 Before POSNER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.
 
 ORDER
 
 1
 Ralphael Okoro, who was convicted of one count of conspiracy to possess with intent to distribute heroin, 21 U.S.C. Secs. 841(1)(a) and 846, and two counts of heroin distribution, 21 U.S.C. Sec. 841(1)(a), appeals the district court's use of the negotiated amount of heroin to determine his sentence under U.S.S.G. Sec. 2D1.1. He claims that the district court erred by finding that he had the intent to distribute six kilograms and was reasonably capable of producing it. After Okoro's attorney appended the equivalent of an Anders brief to the Appellant's Brief to explain why he addressed only one issue, we permitted Okoro to file a pro se supplemental brief, which contains numerous claims. We affirm.
 
 
 2
 Jack Derive, an informant for the Chicago Police, approached Okoro in October 1992 and over time discussed setting up heroin purchases from Okoro's sources for a Houston drug ring. During these negotiations, Okoro claimed that his connections could supply large amounts of heroin. On June 22, 1993, Derive introduced Okoro to DEA Special Agent Randall Bohman, who posed as the representative of the Houston drug ring. Okoro assured him that his suppliers could produce eight kilograms within the next three or four weeks. During this meeting and again at a meeting on July 9, 1993, Okoro agreed to sell Bohman a 100 gram sample by the end of the day. The first time, Okoro failed to supply it entirely, and the second time, his co-conspirator Anya Ihekwaba, after some difficulties, finally delivered a 31% pure 52.8 gram sample of heroin.
 
 
 3
 On August 6, 1993, Okoro, Derive and Bohman met again and arranged a six kilogram deal. Bohman agreed to show Okoro $960,000 at a hotel in advance and to provide a "trap car," a car with a secret compartment. According to Bohman, this meeting was not recorded because Okoro had not produced much thus far. Five days later, Okoro again confirmed that he could provide six kilograms.
 
 
 4
 On August 19, 1993, Derive, Okoro, and Bohman met in a hotel room, where Bohman showed Okoro a canvas bag containing $960,000. Okoro told them that all six kilograms had been present at his home that morning, but that the supplier had become nervous and left, taking it with him. Bohman gave the key to the "trap car" to Okoro, who went home to set up the delivery. Later at Okoro's home, Okoro said for the first time that the supplier wanted to change the shipment arrangement. Okoro would deliver half a kilogram at that meeting and then, if things went smoothly, Bohman would receive the additional amount elsewhere that night. Bohman testified that Ihekwaba, who had been holding 100 grams of the half kilogram of heroin, also assured him that they would deliver the other five and a half kilograms later that night. Okoro and Bohman locked the first half kilogram into the "trap car." Pretending to go back to the hotel for the money, Bohman left and signalled agents to make the arrest. Meanwhile, Okoro and Derive made plans to pick up the rest of the heroin after Bohman returned. The government recovered 495.6 grams of 51% pure heroin.
 
 
 5
 Application Note 12 to U.S.S.G. Sec. 2D1.1 states that "the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount." However, "the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing." Id. The government must prove both intent and capability to produce by a preponderance of the evidence. United Sates v. Ruiz, 932 F.2d 1174, 1184 (7th Cir.), cert. denied, 112 S.Ct. 151 (1991); United States v. Cedano-Rojas, 999 F.2d 1175, 1179 (7th Cir.1993). We review the district court's finding of fact concerning the negotiated amount of heroin under a "clearly erroneous" standard. United States v. Jean, 25 F.3d 588, 598 (7th Cir.1994).
 
 
 6
 The district court did not clearly err by believing the evidence of Okoro's own repeated assertions of his intent to sell six kilograms. Furthermore, Okoro demonstrated the seriousness of this intent by participating in planning the transfer and by completing the first stage of the sale at his home. United States v. Cea, 963 F.2d 1027, 1031 (7th Cir.) (finding that defendant demonstrated his earnestness "by his very specific negotiations as to price and amount" and by his willingness to conduct the transaction at his home), cert. denied, 113 S.Ct. 281 (1992). Despite Okoro's self-serving statements at trial and on appeal, it was not clearly erroneous for the trial court to find Okoro intended to distribute six kilograms.[1]
 
 
 7
 Okoro also claims that his statements about his capability to deliver six kilograms constitute mere "puffery" that cannot form the basis for using the negotiated quantity. Although the investigators apparently had their doubts at certain points in the investigation, the government showed at sentencing that Okoro's assertions of his ability to provide six kilograms passed beyond mere bragging. Okoro successfully delivered half a kilogram, and he and Derive actively planned how to transfer the rest. He upgraded both quality and quantity on demand from 52.9 grams of 31% pure heroin to 495.6 grams of 52% pure heroin.
 
 
 8
 Okoro's "modest lifestyle" does not preclude the district court's finding of capability. He demonstrated that, despite his finances, he could obtain large quantities of heroin from his sources without being paid by his client in advance. A trial court may consider the resources of co-conspirators in determining whether the defendant had the capability to deliver. United States v. Cotts, 14 F.3d 300, 307 (7th Cir.1994) (holding that defendant's lack of sufficient funds to buy large quantities of drugs was not dispositive of the issue of capability, where scheme permitted him to purchase on credit from his supplier); Cea, 963 F.2d at 1031 n. 4 (holding that court may use co-conspirator's assets to prove defendant's ability to purchase drugs, in spite of his own avowed poverty). Okoro argues that his prior difficulties in providing heroin prove that he and his co-conspirators lacked the capability to deliver six kilograms. However, the district court found that the prior instances only demonstrated the difficulty in providing same-day service. Inability to produce quantities on demand in prior transactions do not negate the apparent ability to deliver if given a chance to make appropriate arrangements. Jean, 25 F.3d at 599 (quoting United States v. Mahoney, 972 F.2d 139, 142-43 (7th Cir.1992) (holding that reasonable capability inquiry " 'stops short of directing courts to examine whether the defendant was capable of fulfilling every request of the buyer or seller, regardless of whether it went to the core of the transaction....' "). The trial court did not clearly err by believing his repeated assertions to Bohman and Derive that he was capable of delivering six kilograms. Id. at 598-99 (holding that despite little evidence beyond defendants' own representations, trial court did not clearly err by taking them at their word).
 
 
 9
 Okoro urges us to create a prophylactic rule that requires sentencing judges to infer that the "early" termination of an investigation resulted from the defendant's inability to deliver the full quantity. Although implying that the government could have acted with improper motives, he does not specifically allege bad faith.[2] Instead, he bases this "early termination" inference on the need to negate any attempt by the government to enhance sentences by not testing a suspect's questionable capability. However, Application Note 12 already accounts for the failure to objectively test capability. The government's decision to act quickly without completing delivery left it with the burden of proving Okoro's intent and capability to deliver the larger amount by a preponderance of the evidence. The prejudicial effect on cases where the government acts quickly for other reasons such as safety of agents, lack of manpower, and so forth, dramatically outweighs the minor prophylactic benefit of an inference that the suspect cannot deliver the full amount.
 
 
 10
 We now turn to the numerous claims asserted in Okoro's pro se supplemental brief. After William T. Huyck, who acted as both Okoro's trial and appellate counsel, filed the Appellant's Brief with its Anders appendix, we granted Okoro's pro se motion to file a supplemental brief. In his version of the facts, Okoro had believed that Derive and Bohman were assisting him in his counter-intelligence operation to uncover police corruption within the Nigerian community. He asserts that Derive and Bohman attempted to frame him by leading him into apparently incriminating statements and acts while drunk. At trial, he explained that incriminating taped conversations merely showed Bohman teaching him how to talk to target suspects and negotiating the purchase of some semi-precious stones from him.
 
 
 11
 Okoro claims that his counsel was ineffective because he allegedly refused to pursue Okoro's entrapment conspiracy theory. However, even Okoro's own far-fetched analysis shows at most an attempt to frame him, not to entice him. Given the absence of credible evidence to support an entrapment defense, this omission did not prejudice him to the extent of causing an unreliable result at trial or a fundamentally unfair proceeding. Lockhart v. Fretwell, 113 S.Ct. 838, 844 (1993). Thus, his ineffective assistance of counsel claim concerning the entrapment instruction fails. Furthermore, despite Okoro's assertion to the contrary, the district court did not violate due process by failing to instruct the jury on entrapment sua sponte, because no reasonable jury could find entrapment in this case. Mathews v. United States, 485 U.S. 58, 62 (1988).
 
 
 12
 Okoro also claims that counsel failed to obtain a variety of witnesses and pieces of evidence. Our review of ineffectiveness of counsel claims on direct appeal is limited to the record, and we decline to review these claims because we "perceive[ ] the trial record as being inadequate to decide the issue." United States v. Moragano, Nos. 92-1828, 92-1829, 92-2069, 92-2144, 92-2224, 1994 WL 559518 at * 13 (7th Cir. Oct. 13, 1994).
 
 
 13
 Okoro also raises numerous claims of prosecutorial misconduct. First, in recounting Bohman's testimony during his closing, the prosecutor mistakenly said that Bohman saw Okoro with four kilograms instead of 400 grams. The test for prosecutorial misconduct at trial requires this Court to decide (1) whether the remarks considered in isolation were improper, and (2) whether, in light of the entire record, the defendant was deprived of a fair trial. United States v. Osuorji, 32 F.3d 1186, 1191 (7th Cir.1994). However, given the record as a whole, the weight of the evidence against Okoro and the court's jury instruction to ignore assertions in the closing statement not supported by evidence adduced at trial, we do not find that this misstatement deprived him of a fair trial. Jean, 25 F.3d at 597. Second, the prosecutor declared during a heated cross-examination of Okoro that "You're the dope dealer. You know how much it costs." The trial court sustained defense counsel's objection to the prosecutor's tone of voice. Assuming that the prosecutor acted improperly, a review of the record as a whole, including the fact that the court immediately reacted to defense objections, shows that this exchange did not deprive the defendant of a fair trial. We find Okoro's other claims of prosecutorial misconduct meritless.[3]
 
 
 14
 We reject Okoro's claim that the court's refusal to admit certain evidence offered for the purpose of impeachment violated his rights to confrontation and to effective assistance of counsel. The trial court did not abuse its discretion under Fed.R.Evid. 608(b) by finding that comparison of a taped conversation between Derive and Mrs. Okoro with a third party's impression of the subsequent report did not render the taped conversation sufficiently probative of an act of untruthfulness to require admission. The court also properly sustained the prosecution's objection of lack of foundation for using a document to refresh Derive's recollection, because he not shown any difficulty in recalling events. Hall v. American Bakeries Co., 873 F.2d 1133, 1136 (8th Cir.1989); Charles A. Wright & Victor J. Gold, Federal Practice and Procedure Sec. 6184 (1993).
 
 
 15
 Okoro claims that the district court erred by using the negotiated amount because the use of alcohol and carefully orchestrated conversations to inspire his inadvertent comments constitutes "sentencing entrapment." The doctrine of "sentencing entrapment" holds questionable viability in this Circuit. United States v. Winston, 34 F.3d 574, 581 n. 4 (7th Cir.1994) (citing Cotts, 14 F.3d at 306 n. 2). Regardless, it would not apply in this case because the record reveals no credible evidence of such manipulation, much less of "outrageous governmental conduct." Cotts, 14 F.3d at 306 n. 2. Furthermore, Okoro's other sentencing claims lack merit. The trial court correctly required the government to prove both intent and capability instead of just one factor, Cea, 963 F.2d at 1031, and it had sufficient evidence before it to support imposing a fine.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 The trial court specifically found that Okoro intended to deliver the specific negotiated amount, but made no express finding concerning the intent of the co-conspirators. Citing United States v. Hendrickson, 26 F.3d 321, 333 (2d Cir.1994), Okoro argues for the first time in his reply brief that the government also needed to prove that he had conspired with someone other than the government informant to produce the specific amount. Thus, the government needed to convince the sentencing court to find that Okoro's co-conspirators intended to deliver six kilograms. By raising this claim for the first time in his reply brief, Okoro has waived the issue. Real Estate Date, Inc. v. Sidwell Co., 809 F.2d 366, 376 n. 12 (7th Cir.1987) ("[A]n appellant's argument is to be made in its opening, not its reply, brief."). Furthermore, the court's findings do not constitute plain error. Given that record clearly indicates Ihekwaba's agreement to distribute that amount, the district court's failure to expressly refer to their intent to produce the quantity does not appear to have resulted " 'in the imposition of an erroneous sentence.' " United States v. Wallace, 32 F.3d 1171, 1174 (7th Cir.1994) (citation omitted)
 
 
 [2]
 Although Okoro's counsel does not actually assert intentional manipulation in the Appellant's Brief, Okoro himself claims "sentencing entrapment." See infra
 
 
 [3]
 We find meritless his claims that the prosecution acted improperly by relying on his allegedly drunken statements, that it concealed exculpatory evidence, that it attempted to suborn perjury from Bohman, that various allegedly inconsistent or inaccurate statements demonstrate the prosecution's knowing reliance on perjured testimony by Bohman and Derive, and that the Chicago Police's and United States Attorney's refusal to release confidential personnel files to him to assist his preparation of the supplemental brief on appeal demonstrate a conspiracy against him